LINCOLN GAS & ELECTRIC LIGHT CO. v. CITY OF LINCOLN et al.

(Circuit Court, D. Nebraska, Lincoln Division. April 6, 1909.)

1. GAS (§ 14*)—REASONABLENESS OF MUNICIPAL REGULATION OF RATES—VALUATION OF PROPERTY—FRANCHISE.

In a suit by a gas company to enjoin the enforcement of an ordinance fixing a maximum price to be charged for gas, on the ground that it is confiscatory and unconstitutional, in determining the value of complainant's property on which it is entitled to earn a fair return it is not entitled to any allowance for the value of its franchise to use the street, etc., where such franchise was granted by the city without compensation.

[Ed. Note.—For other cases, see Gas, Cent. Dig. § 10½; Dec. Dig. § 14.*]

2. GAS (§ 14*)—MUNICIPAL REGULATION OF RATES—REASONABLENESS.

Gas rates fixed by a municipality under which the total income earned by a gas company will be sufficient to pay a reasonable return on its investment are not confiscatory because the furnishing of gas to some small consumers under such rate would be at a loss.

[Ed. Note.—For other cases, see Gas, Cent. Dig. § 10½; Dec. Dig. § 14.*]

3. GAS (§ 14*)—REASONABLENESS OF MUNICIPAL REGULATION OF RATES—VALUATION OF PROPERTY—EXCESSIVE ISSUE OF STOCK AND BONDS.

In fixing the value of the property of a gas company on which it is entitled to earn an income, for the purpose of determining the reasonableness of rates prescribed by an ordinance the amount of outstanding stock and bonds of the company should not be considered where it is shown that such amount is several times the cost or present value of its property.

[Ed. Note.—For other cases, see Gas, Cent. Dig. § 10½; Dec. Dig. § 14.*]

4. GAS (§ 14*)—MUNICIPAL REGULATION OF RATES—REASONABLENESS.

Where the net earnings of a gas company under a rate prescribed by ordinance, based on the quantity of gas sold during the preceding year would be sufficient to give a return of over 5 per cent. on the value of its plant, the effect of such ordinance cannot be held confiscatory before an actual trial to determine whether the reduction made in the rate will not result in increased consumption and net earnings.

[Ed. Note.—For other cases, see Gas, Cent. Dig. § 10½; Dec. Dig. § 14.*]

5. LICENSES (§ 7*)—CONSTITUTIONAL REQUIREMENTS—UNIFORMITY—DISCRIMINATION BETWEEN GAS AND ELECTRIC COMPANIES.

Under the requirement of Const. Neb. art. 9, § 6, that a tax shall be uniform on persons and property a gas plant which furnishes gas to the public in a city for lighting, heating, and power purposes and an electric plant which also furnishes light, heat, and power should be classed together for purposes of taxation and a city ordinance imposing an occupation tax based on gross earnings on one, and not on the other, is in violation of such provision and invalid.

[Ed. Note.—For other cases, see Licenses, Cent. Dig. §§ 8, 9; Dec. Dig. § 7.*]

In Equity. Suit by the Lincoln Gas & Electric Light Company against the City of Lincoln and others. Decree for complainant on one cause of action and for defendants on the other.

E. C. Strode, for plaintiff.

J. M. Stewart, for defendants.

W. H. MUNGER, District Judge. Complainant is a corporation organized under the laws of the state of Nebraska, owns and operates

a gas plant in the city of Lincoln, Neb., and furnishes to its patrons gas for lighting, heating, and power purposes. The city of Lincoln, in March, 1872, granted unto the Lincoln Gas Company, a corporation, organized under the laws of the state of Nebraska, a franchise granting the use of the streets, lanes, and alleys in the city, for the purpose of constructing and maintaining a gas plant, and said Lincoln Gas Company constructed a gas plant, of which the complainant, about the year 1901, became the owner. In November, 1906, the city council of the city of Lincoln passed an ordinance, providing that no gas company should charge, exact, demand, or collect, from any consumer, for gas manufactured or sold in said city, more than the sum of $1 net per 1000 cubic feet, which ordinance provided certain penalties for its violation, said ordinance to take effect and be in force from and after December 1, 1906. In December, 1906, said city council also passed an ordinance imposing an occupation tax upon all gas companies manufacturing and furnishing gas to the inhabitants of the city of Lincoln of 2½ per cent. upon the gross receipts of said company, said ordinance to take effect January 1, 1907. This action is brought to enjoin the enforcement of said ordinances, the jurisdiction of this court being invoked upon the ground of a federal question, in that the rate of $1 for each 1000 cubic feet of gas will deprive complainant of its property without just compensation, in violation of the provisions of the Constitution of the United States. The ordinance imposing an occupation tax is alleged to be unconstitutional in that it violates the provisions of section 6, art. 9, of the Constitution of the state of Nebraska, which requires that such a tax shall be uniform upon persons and property, it being alleged that the Lincoln Traction Company operates and maintains an electric lighting plant and furnishes to the city and its inhabitants electricity for light, heat, and power purposes.

A large amount of testimony has been taken for the purpose of determining the value of complainant's gas plant, and the reasonable expense for operating the same. In determining for what amount the plant could be reconstructed I have accepted in the main the testimony of complainant's witnesses as being the most satisfactory, and I find that the plant could be reconstructed for the following sums:

| | | |
|---|---:|---:|
| Coal gas apparatus | $ 80,605 00 | |
| Water gas apparatus | 29,278 00 | |
| Mains in dirt streets | 90,578 00 | |
| Mains in paved streets | 130,027 00 | |
| Gas services, etc | 107,106 82 | |
| Gas meters in use | 36,282 90 | |
| Meter connections | 6,304 00 | |
| Piping for gas ranges | 16,500 00 | |
| | | $496,681 72 |
| Engineering expenses (2½ per cent.) | | 12,417 04 |
| Real estate | | 4,000 00 |
| Present value of buildings | | 24,643 00 |
| Contingent expenses in construction | | 25,000 00 |
| Cost of organizing company | | 3,000 00 |
| | | $565,741 76 |

While the evidence as to the depreciation is somewhat vague and indefinite, I think, upon the items aggregating said $496,681.72 there should be deducted for depreciation 10 per cent., amounting to the sum of $49,688.17, making the total present valuation oı the plant $516,073.59; but it is apparent that, for the successful and economical operation of the plant, a certain amount of working capital is required. This amount I find to be $50,000, making the total value of complainant's investment, upon which it is entitled to a reasonable return, $566,073.59.

While it is true the testimony shows that the complainant has not such working capital but has purchased upon credit the supplies necessary to operate, yet I think that, in determining what is a reasonable compensation, a working capital should be considered.

I do not allow anything as the value of complainant's franchise. It does not appear from the allegations of the bill or proofs that anything was paid to the city for the franchise; the city simply granted to complainant, without compensation, the right to use the public streets and alleys for the purpose of constructing and operating its plant. This was a mere right and privilege to complainant and did not involve the expenditure of money. While it is true a franchise is a property right, which will protect complainant in its use of the streets and alleys for the purposes expressed, yet it involves no investment of money, complainant's investment being in its tangible property under authority of the franchise, and the public ought not to be taxed for a privilege which it has voluntarily granted.

I do not think there is anything in the case of Willcox v. Consolidated Gas Co., 212 U. S. 19, 29 Sup. Ct. 192, 53 L. Ed. 382, which conflicts with this view. In that case the legislative enactment providing for consolidation of various companies expressly required that a value should be given to the franchise of the respective companies. For that reason the court sustained the value of the franchise thus fixed, but refused to recognize any increased value accruing during subsequent years by reason of the large increase in the tangible property from extension, etc. Whether a rate of $1 per thousand for gas would furnish an adequate return upon the investment of $566,073.59 would depend, of course, upon the net receipts which could be applied in dividends. The net receipts of the company for the year 1907 were $73,851.83—this on the basis of the company's charge of $1.20 per thousand. A reduction of 20 cents per thousand, as required by the ordinance, would have reduced the receipts, upon the amount of gas sold in 1907, in the sum of $35,873.26, thus reducing the profit to $37,978.57.

While the plant has been kept in a good state of preservation, needed repairs, etc., having been fully made, and chiefly charged to expense account, something should be allowed as a fund to be set apart for what is denominated a "Depreciation Fund." This I find to be $8,000 per year, leaving the net sum applicable as dividends to stockholders the sum of $29,978.57, or 52 and a fraction mills ᴏn the dollar. This is on the assumption that the occupation tax of 2½ per cent. is invalid. The occupation tax of 2½ per cent. for the

year 1907 would have amounted to $4,484.15.· This occupation tax I think invalid, as violating the Constitution of the state of Nebraska, requiring it to be uniform upon persons and property. In my judgment, an electric plant, which furnishes to the public light, heat, and power should be classed the same as a gas plant, which furnishes to the public light, heat, and power. The fact that one furnishes the light, heat, and power by means of an electric current—the other by a current of gas—does not, in my judgment, justify a difference in classification. So far as the patrons are concerned, it is results that are sought for, and it is results which the respective parties furnish the public—results being light, heat, and power. See, as to classification, State v. Farmers' & Merchants' Irrigation Co., 59 Neb. 1, 80 N. W. 52; Rosenbloom v. State, 64 Neb. 342, 89 N. W. 1053, 57 L. R. A. 922. The ordinance imposing the occupation tax being, in my judgment, invalid, no deduction should be made from the net revenues for that purpose.

It is claimed that the ordinance reducing the price of gas to $1 per thousand fixes a flat rate to all consumers alike; that as to the smaller consumers, gas would be furnished at a loss; that, for this reason, the ordinance is invalid. If the total income derived from the rates prescribed by the ordinance will yield a reasonable return to complainant, upon its investment, I do not think it can complain. See Willcox v. Consolidated Gas Co., supra.

It appears from the evidence in this case that complainant's outstanding bonded indebtedness is $1,129,000, and that its stock is $2,-500,000. The stock and bonds are each grossly in excess of the value of complainant's plant and grossly in excess of the cost of construction. Complainant's construction account shows that the entire cost of the plant to June 30, 1907, was $603,278.14. The evidence shows that complainant and its predecessor, to obtain money with which to construct the plant, sold its bonds and stock at an enormous discount, and I do not think that, in determining the reasonableness of rates the amount thereof should be considered. While complainant, I think, is entitled to at least 6 per cent. upon the money invested, it does not appear that the reduced rate would not yield that sum. It is quite probable that the reduced rate would considerably increase the consumption of gas and thus increase complainant's net profits. The record shows that in June, 1902, complainant voluntarily reduced its rates from approximately $1.50 per thousand to $1.20, and the amount of gas consumed, and net profits resulting, considerably increased. The inquiry in cases of this character is not alone what has complainant theretofore earned, but it is what will be the effect of the ordinance reducing the rate upon the future net earnings of the company, and it devolves upon complainant to show not that the past rates have not produced a reasonable return, but that the rate prescribed by the ordinance will not in the future produce a reasonable return. The questions involved in this case, I think, have been recently disposed of by the Supreme Court in the cases of Knoxville v. Knoxville Water Co., 212 U. S. 1, 29 Sup. Ct. 148, 53 L. Ed. 371; Willcox v. Consolidated Gas Co., 212 U. S. 19, 29 Sup. Ct. 192, 53 L. Ed. 382; Railroad Commission of La. v. Cumberland Tele-

graph & Telephone Co. (decided February 23, 1909) 212 U. S. 414, 29 Sup. Ct. 357, 53 L. Ed. 577.

The question as to whether or not complainant's franchise is a perpetual one or has already terminated has been argued, but that question is not properly involved in the case. The ordinance prescribing the rates to be charged, in effect, admits that complainant is properly occupying the streets and alleys, and whether such occupancy is by reason of a perpetual franchise or by sufferance is not involved in the proper determination of this case.

For the reasons given, an injunction will be awarded against the enforcement of the ordinance imposing an occupation tax. The bill in all other respects will be dismissed without prejudice to the bringing of a new action when it is shown, after compliance with the ordinance fixing rates, that such rates will not yield a reasonable return to complainant.

Counsel for defendants will prepare the proper decree and submit it to counsel for complainant before presenting to the court for signature.