SCHAWK, INC., Plaintiff-Appellee, v. KENNETH ZEHNDER, Director, The Department of Revenue, *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 1—00—1872

Opinion filed November 20, 2001.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Mary Patricia Kerns, Assistant Attorney General, of counsel), for appellants.

Lord, Bissell & Brook, of Chicago (John B Truskowski, Hugh C. Griffin, Hugh S. Balsam, and Sarah H. Dearing, of counsel), for appellee.

JUSTICE GORDON delivered the opinion of the court:

Defendants Kenneth Zehnder, Director of the Illinois Department of Revenue, and Judy Baar Topinka, Treasurer of the State of Illinois (collectively the Department), appeal from an order of the circuit court of Cook County finding that plaintiff Schawk, Inc. (Schawk), is engaged in manufacturing and thus is entitled to a tax credit for certain equipment it uses in its business. On appeal, the Department contends that the circuit court misinterpreted the word "manufacturing" as it is defined in the applicable statute. We reverse and remand for further proceedings.

## BACKGROUND

The following facts regarding the nature of Schawk's business are not in dispute and were stipulated to by the parties. Schawk, a Delaware corporation doing business in Illinois, provides digital imaging prepress services for the consumer products industry. Schawk produces and sells color-separated film (referred to as exposed film, color separations or product) used by its customers to print packaging materials for consumer products such as cereal boxes, promotional materials and in-store displays. Schawk does not generally print the materials itself, but merely supplies the film for printing to its customers.

When Schawk receives a new work order, its customer supplies either electronic files or hard copy transparencies which depict the package, sales display or promotional material the customer wants printed. If Schawk receives an electronic file, it checks to verify that the file contains all of the necessary elements. If hard copy is supplied

by the customer, Schawk's color scanning department scans the transparencies to create an electronic file. A computer operator then corrects or retouches the electronic file to produce a file whose colors match the transparency supplied by the customer.

Subsequently, using a computer, an assembly operator places all of the images in the proper order in the electronic file. This step is important because printing of multiple colors requires that the printing presses apply the colors in the proper order (a separate film is used for each color). Once the electronic file is assembled, it is sent to the digital proofing department. Both mechanical and digital proofs are used. The digital proof is inspected for digital file integrity. The mechanical proof is used to inspect the dimensions of each graphic element and to verify that each element meets printer specifications. After the mechanical quality control department approves the mechanical proof, the electronic file is sent to the film output department, where a final film is produced. Various output devices are used to produce exposed film, which is then developed.

Once the final film is produced, it is inspected by Schawk's film quality control department. A color proof is used to inspect how well the images on the film match the transparency or artwork that was originally supplied by the customer. The film then goes through a final mechanical inspection before it is shipped to the customer's printer.

On its Illinois income tax returns for the tax years ending December 31, 1992, through December 31, 1997, Schawk took investment tax credits pursuant to section 201(e) of the Illinois Income Tax Act (the Act) (35 ILCS 5/201(e) (West 1998)) against its personal property tax replacement income tax liability for various items of machinery and equipment purchased during those years. This equipment is used by Schawk in the course of its business, as described above. Under the Act, the credits would only have been available to Schawk if it was primarily engaged in manufacturing. The Department subsequently audited Schawk's tax returns and determined that Schawk was not entitled to the investment tax credit under section 201(e). Schawk subsequently paid additional amounts in income tax under protest.

On January 24, 1997, Schawk filed a complaint for injunctive relief alleging that it was engaged in manufacturing and that it was thus entitled to claim the income tax credits at issue. The trial court subsequently entered summary judgment in favor of Schawk and against the Department, finding that Schawk was engaged in manufacturing under section 201(e). This appeal followed.

## ANALYSIS

The Department contends that Schawk is not primarily engaged

in manufacturing and is thus not entitled to a tax credit for qualified property pursuant to section 201(e)(1) of the Illinois Income Tax Act (35 ILCS 5/201(e)(1) (West 1998)). We agree.

■ "Where facts are undisputed *** a determination of whether property is exempt from taxation is a question of law." *Chicago Patrolmen's Ass'n v. Department of Revenue*, 171 Ill. 2d 263, 271, 664 N.E.2d 52, 56 (1996). "Statutes exempting property from taxation are to be strictly construed in favor of taxation." *Chicago Patrolmen's Ass'n*, 171 Ill. 2d at 271, 664 N.E.2d at 56. Statutory construction is a question of law and is thus reviewed *de novo*. *Advincula v. United Blood Services*, 176 Ill. 2d 1, 12, 678 N.E.2d 1009, 1015 (1996).

■ "The cardinal rule of statutory construction is to ascertain and give effect to the true intent of the legislature." *Paris v. Feder*, 179 Ill. 2d 173, 177, 688 N.E.2d 137, 139 (1997). "The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning." *Paris*, 179 Ill. 2d at 177, 688 N.E.2d at 139. "The statute should be evaluated as a whole, with each provision construed in connection with every other section." *Paris*, 179 Ill. 2d at 177, 688 N.E.2d at 139. "If legislative intent can be ascertained from the statute's plain language, that intent must prevail without resort to other interpretive aids." *Paris*, 179 Ill. 2d at 177, 688 N.E.2d at 139.

■ Pursuant to section 201(c) of the Act, a tax known as the personal property tax replacement income tax (the tax) is imposed on every corporation, partnership and trust in Illinois. 35 ILCS 5/201(c) (West 1998). A taxpayer is allowed a credit against the tax for investment in qualified property. 35 ILCS 5/201(e)(1) (West 1998). The definition of qualified property provides, *inter alia*, that the property "is used in Illinois by a taxpayer who is primarily engaged in manufacturing or in mining coal or fluorite, or in retailing." 35 ILCS 5/201(e)(2)(D) (West 1998). The Act further defines "manufacturing" as "the material staging and production of tangible personal property by procedures commonly regarded as manufacturing, processing, fabrication, or assembling which changes some existing material into new shapes, new qualities, or new combinations." 35 ILCS 5/201(e)(3) (West 1998).

We find that the plain language of the statute at issue is clear and that the activities engaged in by Schawk are not embraced under the statute's definition of manufacturing. The Oxford English Dictionary defines "manufacture" as follows: "1. *** To work up (material) into form suitable for use. *** 2. To make or fabricate from material; to produce by labour (now esp. on a large scale)." IX Oxford English Dictionary 341 (2d ed. 1989). The American Heritage Dictionary defines "manufacture" as "1. a. To make or process (a raw material) into a

finished product, esp. by means of a large-scale industrial operation. b. To make or process (a product) ***. 2. To create, produce, or turn out in a mechanical manner ***. 3. *** To make or process goods, esp. in large quantities and by means of industrial machines." American Heritage Dictionary 764 (2d Coll. ed. 1982).

Schawk's activities on their face do not appear to fit within the parameters of these definitions. First, Schawk does not appear to be turning out its product in a mechanical manner. Rather, Schawk's business requires the involvement of skilled computer operators who tailor each individual color separation product to the unique needs of each customer. For example, Schawk's computer operators retouch the electronic files for the color separations in order to insure that the colors in the files match the customer's order. Computer operators also assemble an electronic file for each product to place all of the images in the proper order for printing. Further, Schawk does not mass produce its products in large quantities. Rather, it produces a substantially unique product in response to each order from a customer. Finally, since each completed product contains images or artwork unique to the particular customer, Schawk's services destroy all commercial value the unexposed film with which it was produced would have to anyone other than the customer for whom the product was made.

■ Moreover, as we look beyond the dictionary definitions of manufacturing, the inclusion of Schawk's business in the classification "manufacturing" is inconsistent with Illinois precedent classifying the graphic arts as a service occupation in the context of other tax statutes.[1] In *Spagat v. Mahin*, 50 Ill. 2d 183, 189, 277 N.E.2d 834, 837-38 (1971), our supreme court articulated a test to determine if a business is engaged in a service occupation or a retail occupation:

" 'If the article sold has no value to the purchaser except as a

---

[1] The Department would contend that the tax statute at issue is *in pari materia* with other tax statutes, including the Retailer's Occupation Tax Act (35 ILCS 120/1 *et seq*. (West 1996)), and thus these statutes should be construed together. However, we need not decide that issue since we can look to cases construing other statutes having substantially similar language to determine whether those statutes are *in pari materia* or not. *Anderson v. City of Park Ridge*, 396 Ill. 235, 244, 72 N.E.2d 210, 215 (1947) ("It is proper *** to consider statutes upon related subjects though not strictly *in pari materia*"); *cf. Colorcraft Corp. v. Department of Revenue*, 112 Ill. 2d 473, 482-83, 493 N.E.2d 1066, 1070 (1986) (construing definition of manufacturing in the Use Tax Act (Ill. Rev. Stat. 1983, ch. 120, par. 439.3) through analysis of cases which construe other taxes, including the Retailers' Occupation Tax Act, but not arguing that the other statutes are *in pari materia*).

result of services rendered by the vendor and the transfer of the article to the purchaser is an actual and necessary part of the service rendered, then the vendor is engaged in the business of rendering service and not in the business of selling at retail. If the article sold is the substance of the transaction and the service rendered is merely incidental to and an inseparable part of the transfer to the purchaser of the article sold, then the vendor is engaged in the business of selling at retail.' " *Spagat*, 50 Ill. 2d at 189, 277 N.E.2d at 837-38, quoting *Velten & Pulver, Inc. v. Department of Revenue*, 29 Ill. 2d 524, 529 (1963).

Relying on this distinction, courts have concluded that various activities that can be loosely grouped under the classification "graphic arts" constitute services rather than sales of personal property at retail. See, *e.g.*, *H.G. Adair Printing Co. v. Ames*, 364 Ill. 342, 4 N.E.2d 481 (1936) (commercial printing is a service occupation and thus commercial printers are not liable for retailer's occupation tax); *A.B.C. Electrotype Co. v. Ames*, 364 Ill. 360, 360, 4 N.E.2d 476 (1936) (persons producing "electrotypes, stereotypes and matrices" are engaged in a service occupation); *J.A. Burgess Co. v. Ames*, 359 Ill. 427, 194 N.E. 565 (1935) (blueprinters and photostaters are engaged in a service occupation).

■ Likewise, in the case at bar, Schawk is engaged in the business of producing color separations on exposed film, which can also be included as one of the graphic arts. It appears that the primary value of the film that Schawk sells to its customers comes from the services performed by Schawk to customize the film to contain the artwork or designs supplied by the customer. If a customer simply wanted to acquire unexposed film, it is unlikely that it would seek a provider who also performed significant services to place artwork and designs on that film. Furthermore, the services that Schawk provides destroy any value that the unexposed film has to anyone but Schawk's customers. The primary value that Schawk provides its customers is thus the value of these services.

Although the forgoing cases involve the differentiation of service occupations from retail occupations, our supreme court in *Colorcraft Corp. v. Department of Revenue*, 112 Ill. 2d 473, 493 N.E.2d 1066 (1986), has adopted its test for service occupations in order to differentiate them from manufacturing and is squarely on point. The *Colorcraft* court held that photo finishing services constitute services rather than manufacturing for the purpose of an exemption available to manufacturers under the Use Tax Act (Ill. Rev. Stat. 1983, ch. 120, par 439.3). In *Colorcraft* the taxpayer was a business that processed color film into finished photographs for consumers. The taxpayer

argued that it was engaged in the business of manufacturing and thus its photo finishing equipment was exempt from the use tax. The statute at issue defined manufacturing similarly to the statute at issue in the instant case.[2]

The *Colorcraft* court reasoned that the graphic arts had been classified as service occupations rather than retail sales in several earlier cases construing the Retailer's Occupation Tax Act. *H.G. Adair Printing Co.*, 364 Ill. 342, 4 N.E.2d 481; *A.B.C. Electrotype Co.*, 364 Ill. 360, 4 N.E.2d 476; *J.A. Burgess Co.*, 359 Ill. 427, 194 N.E. 565. The *Colorcraft* court noted that our supreme court in *Spagat* had articulated a test to determine if a business is engaged in a service or retail occupation.

The court then held that, like the other graphic arts, photo finishing is a service occupation. The photo finishing process "destroys the materials used as far as their commercial value is concerned." *Colorcraft*, 112 Ill. 2d at 483-84, 493 N.E.2d at 1070. "Once the paper is used to make the customers' prints, except perhaps in rare instances, it is of no value to anyone other than the person for whom the pictures are developed. It is unlikely that the average person would be even remotely interested in purchasing prints developed for another." *Colorcraft*, 112 Ill. 2d at 484, 493 N.E.2d at 1070. The primary value provided by the taxpayer to its customers is thus the service that it renders, and the taxpayer is not in the business of selling tangible personal property. *Colorcraft*, 112 Ill. 2d at 484, 493 N.E.2d at 1070.

We note that not only is the case at bar consistent with the holding in *Colorcraft*, but also on its facts presents a stronger case for determining that the taxpayer's activities are not manufacturing than did the facts in *Colorcraft*. While the activities of processing large numbers of photographs in a largely automated system could be termed mass production (which is generally associated with manufacturing), no such designation can be made in the case at bar. The color-separated film produced by Schawk does not just require development by automated means. Rather, each must be prepared to the customer's unique specifications, with the assistance of human computer operators. *A fortiori*, Schawk is not engaged in manufacturing.

----

[2]Section 3 of the Use Tax Act defined "manufacturing process" as "the production of any article of tangible personal property, whether such article is a finished product or an article for use in the process of manufacturing or assembling a different article of tangible personal property, by procedures commonly regarded as manufacturing, processing, fabricating, or refining which changes some existing material or materials into a material with a different form, use or name." Ill. Rev. Stat. 1983, ch. 120, par. 439.3, quoted in *Colorcraft*, 112 Ill. 2d at 476-77, 493 N.E.2d at 1067.

We do not agree with Schawk's contention that the inclusion of the word "process" in the Act's definition of "manufacturing" expands the definition of "manufacturing" to include Schawk's prepress business. Such a construction would broaden the definition of "manufacturing" well beyond the construction of our supreme court in *Colorcraft*. If "process" and thus "manufacturing" were to be expanded to include Schawk's activities, then certainly the definition would have to be expanded to include the activities that the court in *Colorcraft* specifically held were not manufacturing, even though the statute construed therein was virtually identical in its essential terms and also included "process" as part of its definition of manufacturing. Ill. Rev. Stat. 1983, ch. 120, par. 439.3, quoted in *Colorcraft*, 112 Ill. 2d at 476-77, 493 N.E.2d at 1067.

Our holding does not, however, remove the word "process" from the definition of manufacturing. As made clear in *Colorcraft*, the inclusion of "process" in the definition of manufacturing does not preempt the other prerequisites associated with the definition of manufacturing, namely and among other things, a lack of emphasis on specialized skills, the merchantability of the finished products in the marketplace as a whole rather than only to the specific customer for whom they were prepared, mass production and a lack of uniqueness of each product produced.

Schawk's cases, *Dolese & Shepard Co. v. O'Connell*, 257 Ill. 43, 45, 100 N.E. 235, 236 (1912), *H.H. Kohlsaat & Co. v. O'Connell*, 255 Ill. 271, 272, 99 N.E. 689, 690 (1912), and *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 545 N.E.2d 695 (1989), are inapposite. None of the activities in the cases cited by Schawk have the distinctive features of service occupations that we discussed above and that were discussed in *Colorcraft*. See, *e.g.*, *Dolese & Shepard*, 257 Ill. at 45, 100 N.E. at 236 (holding that constructing roads of sand, gravel or dirt was manufacturing); *H.H. Kohlsaat*, 255 Ill. at 272-73, 99 N.E. at 690 (making baker's goods and restaurant supplies is manufacturing); *Van's Material*, 131 Ill. 2d at 208, 545 N.E.2d at 701 (utilizing above definitions to determine that a ready-mix concrete dump truck was primarily used in the manufacture of tangible personal property). In none of these cases do we have the distinctive features that characterize a service occupation, discussed above, that are present in Schawk's business and that were present in the taxpayer's business in *Colorcraft*.

Finally, we need not address the arguments based on the legislative history. As we stated above, the statute at issue is not ambiguous. Rather, the commonly understood definitions of the words used are readily apparent, as Schawk readily admits. Any resort to legislative

history is thus inappropriate. *Paris*, 179 Ill. 2d at 177, 688 N.E.2d at 139; *Nevitt v. Langfelder*, 157 Ill. 2d 116, 134, 623 N.E.2d 281, 289 (1993). Moreover, even if we were to look to the legislative history, it would not aid Schawk. While Schawk correctly asserts that the bill's sponsor stated that he intended the graphic arts industry to be covered by this exemption, this sole comment by one legislator is of no moment. *Atkins v. Deere & Co.*, 177 Ill. 2d 222, 232-33, 685 N.E.2d 342, 347-48 (1997) ("a preamble constitutes a stronger expression of intent than does a passing comment made by a single legislator during legislative debates); *People v. Hickman*, 163 Ill. 2d 250, 262, 644 N.E.2d 1147, 1153 (1994) ("while a court gives some consideration to statements by the sponsor of a bill, such statements are not controlling").

For the reasons discussed above, the judgment of the circuit court of Cook County is reversed and this cause is hereby remanded for further proceedings not inconsistent with this opinion.

Reversed; cause remanded.

CAHILL and McBRIDE, JJ., concur.