FOURTH DIVISION

March 20, 2003

No. 1-02-0436

ST. PAUL FIRE AND MARINE INSURANCE )   Appeal from

COMPANY, ) the Circuit Court

) of Cook County.

Plaintiff-Appellant, ) 

)

v. ) 

)

ALLEN SMITH, MARJORIE OCASEK, as Special )

Adm'r of the Estate of William Smith, Deceased, ) No. 98 CH 04353

ELIZABETH ING, as Special Adm'r of the Estate of )

Audrey Hardwidge, Deceased, and as Independent ) 

Adm'r of the Estate of William Hardwidge, Deceased, ) 

) 

Defendants-Appellees. )

)

(Valor Insurance Company, )    Honorable

) John K. Madden,

Defendant-Counterplaintiff). ) Judge Presiding.

PRESIDING JUSTICE THEIS delivered the opinion of the court:

Plaintiff St. Paul Fire & Marine Insurance Company (St. Paul) appeals an order of the trial court granting the motion of defendants Allen Smith, Marjorie Ocasek, as special administrator of the estate of William Smith, deceased, Elizabeth Ing, as special administrator of the estate of Audrey Hardwidge, deceased, and independent administrator of the estate of William Hardwidge, deceased (collectively, defendants), for summary judgment declaring that the named driver exclusion contained in St. Paul's automobile liability insurance policy was void as against public policy.  On appeal, St. Paul contends that the named driver exclusion does not violate the mandatory insurance laws of the Illinois Vehicle Code (the Code) (625 ILCS 5/1-100 
et seq.
 (West 1996)).  St. Paul also argues that the named driver exclusion applies to bar coverage for the underlying wrongful death lawsuit because the exclusion was part of the St. Paul policy and was not ambiguous, and contends that the negligent entrustment claim against Allen Smith falls within the scope of the exclusion. 

The main issue before this court is one of first impression in Illinois, whether a named driver exclusion in an automobile liability insurance policy violates Illinois public policy.  We find that it does not and reverse and remand for further proceedings.

On June 3, 1996, William Smith (William), while driving a vehicle owned by his father, Allen, collided with an automobile carrying William and Audrey Hardwidge.  All three individuals died as a result of their injuries.  At the time of the accident, William had an automobile liability insurance policy issued by Valor Insurance Company (Valor).  The car was insured by St. Paul, under a personal insurance package policy including homeowners and automobile liability insurance procured by William's parents, Allen and June Smith.  The St. Paul policy initially listed Allen and June as insureds and drivers covered under the policy.  On January 2, 1996, William was added as a covered driver to Allen and June's policy.  St. Paul then received William's driving record, which revealed that his license had previously been suspended and revoked because he had been convicted of driving under the influence of alcohol twice and driving with a revoked license.  St. Paul removed William as a covered driver from Allen and June's policy on January 22, 1996, and required Allen and June to sign a named driver exclusion, which excluded liability for any accidents or losses incurred while the car was driven by William.  

In July 1997, the administrators of the estates of William and Audrey Hardwidge filed a lawsuit against the estate of William Smith and Allen (the underlying suit).  The complaint included several wrongful death counts against William's estate and a negligent entrustment count against Allen, alleging that Allen allowed William to use his car even though he knew that William had been abusing alcohol for a substantial period of time, William had previously been convicted of driving under the influence of alcohol and William was not covered by Allen's automobile insurance policy.  Both Allen and William's estate tendered their defenses to Valor, which provided their defenses.  Neither Allen nor William's estate tendered their defenses to St. Paul.  In January 2000, a verdict of $5 million was entered against Allen and William's estate.  Valor then paid its policy limits of $20,000 to each of the Hardwidge estates.  

In April 1998, St. Paul filed a complaint for declaratory judgment, seeking a declaration that it did not owe a duty to defend and/or indemnify Allen or William's estate in the underlying suit because the named driver exclusion in Allen's insurance policy barred coverage for any accident involving a vehicle driven by William.  Several months after paying its policy limits in the underlying suit, Valor was granted leave to intervene in St. Paul's declaratory judgment action and filed a counterclaim for declaratory judgment.  St. Paul filed a motion for summary judgment, arguing that the named driver exclusion operated to bar any coverage obligation to Allen and William's estate.  Valor and defendants filed cross-motions for summary judgment, contending that the named driver exclusion violated Illinois public policy as contained in the mandatory insurance requirements of the Code.  Defendants also argued that the exclusion was ambiguous, was not attached to the insurance policy and did not apply to bar claims of negligent entrustment.

The trial court granted Valor's and defendants' summary judgment motions and denied St. Paul's motion on July 27, 2001.  On December 12, 2001, the trial court clarified that order and held that the sole basis of its ruling was that the named driver exclusion was void because it violated public policy.  On January 7, 2001, the trial court made an express written finding pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), that there was no just reason to delay enforcement or appeal of the July 27, 2001 and December 12, 2001 orders.  St. Paul then filed this timely appeal.
(footnote: 1)  

Summary judgment is appropriate only where the pleadings, depositions, admissions and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  
Ferguson v. McKenzie
, 202 Ill. 2d 304, 308, 780 N.E.2d 660, 662 (2001), citing 735 ILCS 5/2-1005(c) (West 1998).  We review an appeal from the grant of summary judgment 
de novo
.  
Ferguson
, 202 Ill. 2d at 308, 780 N.E.2d at 662.  This case involves a question of statutory interpretation, which we also review 
de novo
.  
Land v. Board of Education of the City of Chicago
, 202 Ill. 2d 414, 421, 781 N.E.2d 249, 254 (2002).  In interpreting a statute, the court must ascertain the legislature's intent, which is found in the plain and ordinary meaning of the language used in the statute.  
Land
, 202 Ill. 2d at 421, 781 N.E.2d at 254.  

Courts apply terms in an insurance policy as written unless those terms contravene public policy.  
State Farm Mutual Automobile Insurance Co. v. Smith
, 197 Ill. 2d 369, 372, 757 N.E.2d 881, 883 (2001).  Statutes are an expression of public policy.  
Smith
, 197 Ill. 2d at 372, 757 N.E.2d at 883.  "Statutes in force at the time an insurance policy was issued are controlling, and a statute's underlying purpose cannot be circumvented by a restriction or exclusion written into an insurance policy.  [Citation.]  Accordingly, insurance policy provisions that conflict with a statute are void."  
Smith
, 197 Ill. 2d at 372, 757 N.E.2d at 883.  

In this case, the named driver exclusion in Allen's St. Paul automobile liability insurance policy provided: 

"Driver Exclusion Policy Number:    PK01200772

Named Insured:   Smith, Allen & June

This endorsement changes the policy.

Please read it carefully.

We will not be liable for any accidents or losses while any auto or motorhome is driven by: William R. Smith[.]"

The exclusion was signed by Allen, June and William in January 1996.  

Section 7-601(a) of the mandatory insurance provision in the Code requires that all vehicles be insured through a liability insurance policy.  625 ILCS 5/7-601(a) (West 1996); 
Smith
, 197 Ill. 2d at 373, 757 N.E.2d at 883.  Section 7-317(b)(2) of the Code's safety responsibility law requires that a motor vehicle liability policy "insure the person named therein and any other person using or responsible for the use of such motor vehicle or vehicles with the express or implied permission of the insured."  625 ILCS 5/7-317(b)(2) (West 1996).  Construing these provisions together, our supreme court interpreted these statutes to mandate that "'a liability insurance policy issued to the owner of a vehicle must cover the named insured and any other person using the vehicle with the named insured's permission.'"  
Smith
, 197 Ill. 2d at 373, 757 N.E.2d at 883, quoting 
State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group
, 182 Ill. 2d 240, 244, 695 N.E.2d 848, 850 (1998).  In affirming the appellate court, our supreme court in 
Smith
 noted that "'[t]he purpose of mandatory automobile liability insurance is not only to protect the owner against liability or some other insurance company; rather, its principal purpose is to protect the public by securing payment of their damages.'"  
Smith
, 197 Ill. 2d at 376, 757 N.E.2d at 885, quoting 
State Farm Mutual Automobile Insurance Co. v. Fisher
, 315 Ill. App. 3d 1159, 1163, 735 N.E.2d 747, 751 (2000).

Defendants maintain that the trial court was correct in holding that the named driver exclusion in St. Paul's liability insurance policy violates Illinois public policy because it conflicts with the language of the Code
.  The Code requires that every insurance policy cover the named insured and "any other person" using the vehicle with the insured's express or implied permission.  625 ILCS 5/7-317(b)(2) (West 1996).  However, the named driver exclusion allows the insurer to exclude certain individuals from coverage.  Defendants contend that the definition of the term "any other person" necessarily includes the driver who was purportedly excluded from coverage by the named driver exclusion, assuming he had the insured's permission to operate the vehicle.  Thus, defendants argue, the exclusion conflicts with the statute and is void.  

In response, St. Paul argues that the named driver exclusion does not violate public policy.  Citing section 7-602 of the Code, St. Paul contends that this section clearly creates a limited exception for named driver exclusions to the mandatory insurance laws.  625 ILCS 5/7-602 (West 1996).  We agree.  

Section 7-602 of the Code discusses the requirements for insurance cards and provides in relevant part: 

"If the insurance policy represented by the insurance card does not cover any driver operating the motor vehicle with the owner's permission, or the owner when operating a motor vehicle other than the vehicle for which the policy is issued, the insurance card shall contain a warning of such limitations in the coverage provided by the policy."  625 ILCS 5/7-602 (West 1996).  

The plain language of this statute appears to recognize that insurance policies may exclude named drivers from coverage and conflicts with the mandatory insurance requirements of sections 7-601 and 7-317(b)(2).  

When there is an alleged conflict between two statutes, a court interprets those statutes to avoid inconsistency and give effect to both statutes where such an interpretation is reasonably possible.  
Ferguson
, 202 Ill. 2d at 311-12, 780 N.E.2d at 664.  Sections of the same statute should be considered 
in pari materia
 and each section should be construed with every other part or section of the statute to produce a harmonious whole.  
Land
, 202 Ill. 2d at 422, 781 N.E.2d at 254.  We presume that when enacting the statute, the legislature did not intend absurdity, inconvenience or injustice.  
Land
, 202 Ill. 2d at 422, 781 N.E.2d at 255.  

In interpreting section 7-602, we note that this section is located in Article VI, entitled "Mandatory Insurance," of the Illinois Safety and Family Financial Responsibility Law of the Code.  Further, section 7-602 is situated directly after section 7-601, which requires vehicles to be covered by a liability insurance policy.  Section 7-602 was added to the Code by the same public act that created section 7-601, and the mandatory insurance article and both sections share the same effective date.  Although section 7-602 has been amended several times since its enactment in 1989, the legislature has never removed or changed this language concerning policy limitations.  Thus, after construing section 7-602 with section 7-601, we hold that by enacting section 7-602, the legislature intended to create a limited exception for named driver exclusions to the mandatory insurance laws.  

We find additional support for our holding from the administrative regulations promulgated by the Secretary of State.  Section 7-602 specifically authorizes the Secretary of State to prescribe rules and regulations concerning the form, content and manner of issuance of insurance cards.  625 ILCS 5/7-602 (West 1996).  Properly promulgated administrative regulations have the force and effect of law.  
Chandler v. Illinois Central R.R. Co.
, 333 Ill. App. 3d 463, 472, 776 N.E.2d 315, 322-23 (2002).  The regulation concerning insurance card requirements provides that: "d) The insurance card shall contain the following insurance information: * * *  7) a warning of excluded drivers or vehicles, when applicable."  50 Ill. Adm. Code § 8010.20(d)(7) (1996).  Therefore, this administrative regulation is further evidence that the legislature intended to carve out a narrow exception for the named driver exclusion.  Accordingly, we find that the named driver exclusion in St. Paul's insurance policy is valid and does not violate public policy. 

Although defendants rely on 
Smith
 to support their argument that named driver exclusions violate public policy, we find that case distinguishable.  In 
Smith
, State Farm invoked its automobile business exclusion to bar coverage for an accident occurring while the insured vehicle was operated by a valet driver.  That exclusion purported to deny liability coverage while any insured vehicle was being repaired, serviced or used by any person employed in a car business.  
Smith
, 197 Ill. 2d at 373, 757 N.E.2d at 883.  In explaining Illinois's public policy, our supreme court reiterated that a motor vehicle liability policy must cover the named insured and any other person using the vehicle with the insured's permission.  Because when a vehicle owner gives his vehicle to a person engaged in an automobile business, he is also giving that person permission to operate the vehicle, the court found that the automobile business exclusion violated section 7-317(b)(2).  
Smith
, 197 Ill. 2d at 374, 757 N.E.2d at 884. 

However, unlike the present case, there was no additional statutory language in 
Smith
 implying that the legislature intended to create such an exception.  Further, 
Smith
 concerned a broad exclusion that barred liability for accidents caused by an entire class of people, those involved in any automobile business.  In contrast, the present case involves a more limited exclusion, only precluding coverage for certain individuals.  Additionally, 
Smith
 specifically limited its decision to the validity of the automobile business exclusion only, stating that "[t]he permissibility of other possible policy exclusions is not before us today, and we express no opinion as to any other exclusion."  
Smith
, 197 Ill. 2d at 379, 757 N.E.2d at 886.  Thus, we find 
Smith
 distinguishable.  

Additionally, we note that other states upholding the validity of named driver exclusions have delineated several public policy reasons supporting the exclusions.  A Texas appeals court 
found that named driver exclusions furthered Texas's public policy of protecting all potential claimants from damages resulting from automobile accidents by enabling drivers with family members having poor driving records to procure affordable insurance, rather than obtaining coverage from an assigned risk pool at a greater cost or not securing insurance at all.  Further, these exclusions deterred insured drivers from entrusting their vehicles to unsafe excluded drivers which kept those unfit drivers off the road.  
Zamora v. Dairyland County Mutual Insurance Co.
, 930 S.W.2d 739, 741 (Tex. Ct. App. 1996).  See also
 
Pierce v. Oklahoma Property & Casualty Insurance Co.
, 901 P.2d 819, 823 (Okla. 1995) ("[o]ur legislature realized that premiums might be too costly in some circumstances, and chose to allow the contracting parties to exclude specifically named individuals," allowing families to obtain affordable insurance); 
State Farm Mutual Automobile Insurance Co. v. Washington
, 641 A.2d 449, 451-52 (Del. 1994) (named driver exclusions "ensure continued coverage of an automobile where the driving record of a household member warrants non-issuance or cancellation"); 
Dairyland Insurance Co. v. State Farm Mutual Automobile Insurance Co.
, 882 P.2d 1143, 1146 (Utah 1994) (the rationale of the exclusion "is to enable households that include a family member who has a poor driving record to obtain insurance at a reasonable cost by excluding the poor driver").  We agree that these policy reasons are sound and further support our holding.

Therefore, we hold that the named driver exclusion in St. Paul's automobile insurance liability policy does not contravene Illinois public policy because the legislature created a limited exception to the mandatory insurance laws for this exclusion.  We note that our decision in this case concerns only the named driver exclusion and we express no opinion as to any other exclusions.  Accordingly, we reverse the trial court's grant of summary judgment to defendants.  While the parties raise several other factual issues concerning the application of this named driver exclusion to the underlying suit, we note that the trial court never considered these issues and we decline to address them.  Rather, we remand this cause to the trial court for further proceedings.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause remanded for further proceedings.

Reversed and remanded. 

HARTMAN and GREIMAN, J.J., concur. 

FOOTNOTES
1:  Valor is not a party to this appeal.  Additionally, Valor's cross-appeal was dismissed by this court on Valor's motion in March 2002.