MARTIN DEKELAITA *et al.*, Plaintiffs-Appellants, v. NISSAN MOTOR CORPORATION IN USA, Defendant-Appellee.

First District (1st Division)   No. 1—02—3618

Opinion filed September 29, 2003.

Scott M. Cohen and Jennifer L. Basola, both of Krohn & Moss, Ltd., of Chicago, for appellants.

Bruce S. Terlep and Matthew D. Jacobson, both of Swanson, Martin & Bell, of Wheaton, for appellee.

JUSTICE GORDON delivered the opinion of the court:

Martin and Akhshirash Dekelaita (plaintiffs or lessees) appeal from the circuit court of Cook County dismissing their three-count action under the Magnuson-Moss Warranty—Federal Trade Improvement Act (the Act) (15 U.S.C. § 2301 *et seq.* (2000)), set forth below,

concerning a defective vehicle. Plaintiffs contend that they have successfully stated a claim even though they are lessees, not purchasers, of the defective automobile. For the reasons below, we reverse.

## BACKGROUND

In February 2000, plaintiffs leased a 2000 Nissan Maxima from a local Nissan dealership. The dealership, Fergus Nissan (Fergus), then assigned its interest in the lease and sold the car to Nissan Motor Acceptance Corporation (NMAC). NMAC purchased the car from Fergus in order to lease it to plaintiffs.

In connection with that sale, defendant Nissan Motor Company (defendant or Nissan) issued to NMAC a written warranty that covered the car for 3 years or 36,000 miles. Plaintiffs averred that NMAC would have not purchased the car, nor would plaintiffs have leased it, without this warranty. NMAC assigned its rights in defendant's written warranty to plaintiffs. NMAC thus is not a party to this action.

The lease between NMAC and plaintiffs restricted plaintiffs from a number of activities. Among other things, the lease forbade plaintiffs from using the vehicle to transport goods for hire; it forbade plaintiffs from altering or installing equipment and required plaintiffs to restore the vehicle to its original condition; it forbade plaintiffs from removing the vehicle from the contiguous states without consent. It also noted that plaintiffs had no right to assign, transfer or sublease any of their rights under the lease.

In addition to those restrictions, the lease contained an option to purchase the vehicle from the "originating dealer" or other specified location. That option provided that plaintiffs could purchase the vehicle prior to or at the end of the lease. If plaintiffs chose to exercise that right at the end of the lease, they would have paid $17,168.40 in monthly payments and would pay $17,059.20, the residual value of the vehicle. Plaintiffs also paid an "up-front sales tax" and all title, license, and registration fees. They were responsible for obtaining insurance coverage for comprehensive, collision, property damage, and bodily injury.

Shortly after they took possession, plaintiffs began to experience problems with the engine (failing to start, running rough, and intermittent illumination of the check-engine light) and the brakes. Pursuant to the warranty, on numerous occasions, plaintiffs tendered the car to defendant's authorized dealerships for repair, and the dealerships serviced the car. Despite these efforts, however, defendant ultimately did not repair the car.

Because of defendant's failure to repair the car and because of its subsequent refusal to revoke acceptance of the car, plaintiffs sought

redress. Under the Act, plaintiffs alleged breach of written warranty and breach of implied warranty, and they sought revocation of acceptance. The trial court dismissed the action pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2000)), determining that by its plain language, the Act governs only when a vehicle is sold, not when it is leased. Plaintiffs appeal. Further facts are set forth as necessary.

## ANALYSIS

■ As noted above, this case is before us on a section 2—619 motion to dismiss. Such a motion presents only a question of law, and an appeal taken from a motion to dismiss is reviewed *de novo*. *Intergovernmental Risk Management v. O'Donnell, Wicklund, Pigozzi & Peterson Architects, Inc.*, 295 Ill. App. 3d 784, 790, 692 N.E.2d 739, 742 (1998). All well-pleaded facts are accepted as true and viewed in the light most favorable to the plaintiff. *Bartow v. Ford Motor Co.*, 342 Ill. App. 3d 480, 483, 794 N.E.2d 1027, 1030 (2003). "[T]he appellate court must consider whether the existence of a material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal was proper as a matter of law." *Intergovernmental*, 295 Ill. App. 3d at 790, 692 N.E.2d at 742.

■ Very generally, the Act was designed to enhance the enforceability of various warranties. In its own words, the statute is designed to "improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products." 15 U.S.C. § 2302(a) (2000). It requires that any written warranty be "fully and conspicuously" disclosed in "simple and readily understood language." 15 U.S.C. § 2302(a) (2000).

More specifically, the Act permits "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract" to sue the warrantor for damages; elect repair, replacement, or refund of defective parts; and collect attorney fees. 15 U.S.C. §§ 2310(d)(1), (d)(2) (2000).

## Statutory Definitions

The crux of this appeal turns on statutory interpretation of various portions of the Act. Three particular issues arise: (1) whether lessees are "consumers" under either of the three definitions in the Act; (2) given that the definition of "written warranty" states that the warranty must be issued "in connection with the sale" of the consumer product, whether lessees effectively must obtain transfer of title or, alternately, whether that language can apply to the sale between Fergus, the dealership, and the lessor, NMAC; and (3) whether

lessees have stated an action for breach of an implied warranty so as to become consumers regardless of whether the definition of "written warranty" is satisfied.

■ We begin with an overview of the statutory terms in question. The Act gives a three-pronged definition of "consumer":

"[1] a buyer (other than for purposes of resale) of any consumer product,[1] [2] any person to whom such product is transferred during the duration of an implied or written warranty (or service contract) applicable to the product, and [3] any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract)." 15 U.S.C. § 2301(3) (2000).

■ Embedded twice within the meaning of "consumer" is the term "written warranty." The Act defines "written warranty" as:

"(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

(B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,

which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product." 15 U.S.C. § 2301(6) (2000).

■ Also at issue is whether plaintiffs are entitled to sue for breach of "implied warranty," which is defined as: "an implied warranty arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7) (2000).

■ In analyzing these definitions, we are cognizant of several

---

[1]No question arises as to whether the leased vehicle is a "consumer product." The Act defines a "consumer product" as:

"any tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purpose (including any such property intended to be attached to or installed in any real property without regard to whether it is so attached or installed)." 15 U.S.C. § 2301(1) (2000).

canons of statutory interpretation. " 'The cardinal rule of statutory construction is to ascertain and give effect to the true intent of the legislature.' [Citation.]" *Schawk, Inc. v. Zehnder*, 326 Ill. App. 3d 752, 755, 761 N.E.2d 192, 194 (2001). In divining intent, we presume the legislature did not intend to create absurd, inconvenient, or unjust results. *In re B.L.S.*, 202 Ill. 2d 510, 514, 782 N.E.2d 217, 220 (2002). " 'The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning.' [Citation.]" *Schawk*, 326 Ill. App. 3d at 755, 761 N.E.2d at 194. " 'The statute should be evaluated as a whole, with each provision construed in connection with every other section.' [Citation.]" *Schawk*, 326 Ill. App. 3d at 755, 761 N.E.2d at 194. " 'If legislative intent can be ascertained from the statute's plain language, that intent must prevail without resort to other interpretive aids.' [Citation.]" *Schawk*, 326 Ill. App. 3d at 755, 761 N.E.2d at 194. "Sections of the same statute should be considered *in pari materia* and each section should be construed with every other part or section of the statute to produce a harmonious whole." *St. Paul Fire & Marine Insurance Co. v. Smith*, 337 Ill. App. 3d 1054, 1060, 787 N.E.2d 852, 856 (2003).

## Defining "Consumer" under the Act

Beginning with the definition of "consumer," we note at the outset that courts have interpreted this provision as meaning that a person need only meet one of the three criteria set out above. *DiCintio v. DaimlerChrysler Corp.*, 97 N.Y.2d 463, 469, 768 N.E.2d 1121, 1124, 742 N.Y.S.2d 182, 184 (2002). Thus, lessees must fall within only one of the three options set forth above to meet the Act's definition of "consumer"—either they are a "buyer," a "transferee" or are otherwise entitled to enforce a warranty.

Defendant argues that a lessee cannot be a "consumer" as defined in the Act because each prong of the definition requires a sale. As shall be more fully explained below, defendant asserts that the first prong of the definition uses the term "buyer" and thus contemplates a sale. The remaining two prongs reference the terms "written warranty" and "implied warranty," in which both definitions explicitly require a sale. This argument impacts the definition of "consumer," it argues, because if there is no sale, then plaintiffs are not "consumers" under the first prong of the definition; similarly, if there is no sale, there is no "written warranty" or "implied warranty," and plaintiffs are not "consumers" under the second two prongs.

▮ With respect to the first prong, neither party specifically contends that plaintiffs meet the first definition of "consumer"—not even plaintiffs contend they are buyers. Although it is arguable that a

long-term lessee with an option to purchase could be considered a "buyer" so as to constitute a "consumer," the lessees nevertheless bypass the first prong and argue that they are consumers under either the second or third prong. We note however that we are not satisfied that long-term lessees would not meet the definition of a buyer under the first prong, but shall deal with that question later on. We will first analyze whether a lessee fits under the second and third prongs because that is the argument advanced by lessees.[2]

Thus, assuming without deciding for the moment that plaintiffs do not meet the first prong, we turn to the second and third prongs. Defendant asserts that lessees do not meet either of these prongs because there is no sale as required in the definition of "written warranty" or "implied warranty." Again, we revisit that particular contention below, and for now examine those terms in isolation.

Regardless of whether plaintiffs meet the first prong, at first blush it appears that lessees, in general, meet the second prong of "consumer," which includes "any person to whom such product is transferred during the duration of an implied or written warranty *** applicable to the product." 15 U.S.C. § 2301(3) (2000). A consumer product, the automobile, was physically transferred into lessees' possession, even though it carried specific obligations and restrictions in connection with their use and enjoyment. Also, because requiring the consumer to be a "buyer" was in the definition's first prong, *supra*, and because legislators are presumed to give each word meaning, it would seem inappropriate to read this clause in the second prong as requiring a purchase or a transfer of title, as such requirement is typically read into terms like "buyer." Nonetheless, some courts excluded lessees by logically drawing the definition of "transferee" from the Uniform Commercial Code (Uniform Commercial Code—Sales § 2—106(1), 1 U.L.A. 215 (1989)), which is "passing of title." *DiCintio*, 97 N.Y.2d at 470, 768 N.E.2d at 1124, 742 N.Y.S.2d at 185. Under that definition, courts have held that title must be transferred, and a lessee would be excluded therefrom.[3] See also *Diamond v. Porsche*, No. 02 C 414, slip op. at 3 (N.D. Ill. September 26, 2002) (statute requires

---

[2]We note that while lessees do not raise this argument under the first prong of the definition of "consumer," they do argue that a lessee should be a buyer with respect to the provisions of the Act that define "written warranty" and "implied warranty," as discussed below.

[3]Another ground for rejecting that a lessee could be a transferee is based on the word "duration." This argument is based on the timing of the transfer. Where the product was transferred to the lessee before the car was sold to the lessor, one court concluded that a lessee could not be a "person to whom such product is transferred *during* the duration of an implied or written warranty."

transfer of a *product*), *vacated on other grounds,* No. 02—3585 (7th Cir. July 16, 2003); but see *Cohen v. AM General Corp.,* 264 F. Supp. 2d 616, 619 (N.D. Ill. 2003) (summarily noting that all rights in warranty were transferred to lessees).

Again, assuming, without deciding, that plaintiffs did not meet the first and second prongs of the "consumer" definition set forth above, we examine whether plaintiffs meet the third prong. That prong is broader than the other two and is somewhat of a catchall provision: "any other person who is entitled by the terms of such warranty (or service contract) or under applicable State law to enforce against the warrantor (or service contractor) the obligations of the warranty (or service contract)." 15 U.S.C. § 2301(3) (2000). Plaintiffs were assigned the rights of the warranty by NMAC and were entitled to enforce them, perhaps even if only under state law. See, *e.g., Collins Co. v. Carboline Co.,* 125 Ill. 2d 498, 532 N.E.2d 834 (1988) (assignee of warrantee's rights under express warranty succeeds to all those rights and stands in privity with warrantor).

Indeed, defendant did service the automobile on numerous occasions pursuant to the warranty. Moreover, defendant does not challenge that plaintiffs have an enforceable warranty that exists under state law; it merely argues that the written warranty does not meet the specialized definition imposed under the Act, which requires that a warranty be connected to a sale. Even if one accepts that contention, however, the lessees would satisfy the third prong of the Act, which does not require that the warranty be connected to a sale but simply that it would be enforceable under state law. And, as noted, no one asserts that this warranty is unenforceable under state law by a lessee as well as by a purchaser. This is particularly true in this case, where the lessees would be entitled to enforce the warranty by virtue of its assignment to them. Because they otherwise were entitled to enforce the warranty, then, plaintiffs meet the third definition of "consumer" under the Act. See *Diamond,* slip op. at 3; *Cohen,* 264 F. Supp. 2d at 620.

"Written Warranty," "Implied Warranty" and "Consumer"

Rather than directly confront whether plaintiffs are consumers under the Act, defendant argues that to enforce a written or implied

---

(Emphasis added.) *DiCintio,* 97 N.Y.2d at 474, 768 N.E.2d at 1126-27, 742 N.Y.S.2d at 188. We find that to be a hyper-technical and imprecise application of the statute because, as explained below, a warranty attaches to those consumer products that the supplier makes "indirectly" available to consumers. The timing of the sale or transfer of the product, then, cannot be so determinative.

warranty, the consumer must have acquired the consumer product by way of a sale. As spelled out above, both definitions of "written warranty" and the definition of "implied warranty" include the language, "made in connection with a sale." 15 U.S.C. § 2301(6) (2000).

Notwithstanding whether the provisions defining "consumer" are satisfied by the mere enforceability under state law, there remains a question whether enhanced enforcement of this warranty is permissible under the specific definitions of "written warranty" and "implied warranty" under sections 2301(6) and 2301(7) of the Act. Defendant argues that because lessees have no ownership rights, they cannot recover under the Act. Such reasoning is widely adopted. See, *e.g.*, *Diamond*, slip op. at 4-5; *DiCintio*, 97 N.Y.2d at 475, 768 N.E.2d at 1127, 742 N.Y.S.2d at 188.

■ Plaintiffs' arguments appear twofold and are argued somewhat in the alternative. First, they argue that the phrase "in connection with a sale" in the two definitions of "written warranty" and in the definition of "implied warranty" can be construed to mean the sale between Fergus Nissan and NMAC and thereby satisfy the Act. *Cohen*, 264 F. Supp. 2d at 619. Second, as alluded to above, they argue that the lease agreement is a "sale" for purposes of the Act. *Henderson v. Benson-Hartman Motors, Inc.*, 33 Pa. D. & C.3d 6, 8, 41 U.C.C. Rep. Serv. (CBC) 782, 783-84 (1983) (allowing claim under Act to automobile lessee); *Freeman v. Hubco Leasing, Inc.*, 253 Ga. 698, 702, 324 S.E.2d 462, 467 (1985) (same). We agree with plaintiffs' first argument.

Though the majority of courts fall on the side of the defendant, we are persuaded by the Act's plain language that the legislature's intent was to cover lessees. In so holding, we return to our examination of the Act's plain language. The legislature's definitions of "written warranty" and "implied warranty" state quite simply that the warranty be issued "in connection with the sale" of a consumer product: Congress does not demand its readers to conclude that the sale must be between the consumer and the supplier.

Where, as here, there was a sale—between the dealer and the lessor—it suffices to say that there was a written warranty issued in connection with the sale. In no event does the Act limit a "sale" to transactions between the warrantor and the ultimate consumer. *Cohen*, 264 F. Supp. 2d at 619. Taking the relevant "sale" to be between Fergus and NMAC confers warranty rights under the Act to the plaintiffs. The warranty gave rise to rights produced "in connection with the sale" as mandated by the Act, and those rights now are enforceable by the plaintiffs as assignees. In the instant case, then, in connection with the sale, the warranty was assigned to the lessees, who are consumers entitled to enforce the Act.

We find further support from expanding the language we examine, thereby employing the canon, *in pari materia*. *St. Paul Fire*, 337 Ill. App. 3d at 1060, 787 N.E.2d at 856. Under subsection A, a "written warranty" must be "in connection with the sale of a consumer product by a *supplier*"; under subsection B, a "written warranty" must be "in connection with the sale by a *supplier* of a consumer product." (Emphases added.) 15 U.S.C. § 2301(6) (2000). The definition of "implied warranty" also includes the phrase "in connection with a sale by a *supplier*." (Emphasis added.) 15 U.S.C. § 2301(7) (2000). The term "supplier" means "any person engaged in the business of making a consumer product directly or indirectly available to consumers." 15 U.S.C. § 2301(4) (2000). If the term "supplier" could apply only to NMAC and not to defendant, then we would agree that a sale must necessarily have occurred between NMAC and plaintiffs in order for plaintiffs to have a "written warranty" enforceable under the Act. But that is not the case.

Defendant, as manufacturer, is in the business of making its vehicles directly or indirectly available to consumers. At least with written warranties, the Act does not require that a supplier be in contractual privity with the consumer so as to restrict the meaning of "sale" to be a transaction only between a direct supplier and a consumer. *Abraham v. Volkswagen of America, Inc*, 795 F.2d 238, 248 (2d Cir. 1986); G. Monserud, *Rounding out the Remedial Structure of Article 2: The Case for a Forced Exchange between a Buyer and a Remote Seller*, 19 Dayton L. Rev. 353 (1994). Rather, the Act implicates those suppliers who make their products "indirectly available to consumers." Here, Fergus made the car directly available to the lessor and lessees. See *Ismael v. Goodman Toyota*, 106 N.C. App. 421, 417 S.E.2d 290 (1992) (car dealership was in the business of making used cars directly available to consumers so as to meet the Act's definition of "supplier"). Applying the plain language of the statute, it follows that defendant manufacturer, from whom Fergus purchased the automobile, made the automobile *indirectly* available to consumers. In short, there was a "written warranty" issued in connection with the sale from a "supplier" to a "consumer"—albeit, but permissibly, *indirectly*.

Having determined that lessees should be entitled to enforce their warranty under the Act, we confront one leading case, *DiCintio, supra*, from the New York Court of Appeals, which is in opposition. In *DiCintio*, as here, the court faced the question whether the sale of a vehicle after it was leased to a lessor was a "sale" under the Act so as to trigger the definition of "written warranty." As advocated by defendant, the court determined that a lessee could not be a "consumer" by

determining that each prong in the definition of "consumer" required a sale. *DiCintio*, 97 N.Y.2d at 470, 768 N.E.2d at 1124, 742 N.Y.S.2d at 185. The court noted that the first prong required that the consumer be a buyer and therefrom concluded that title must pass.

As for the remaining two prongs of "consumer," the court determined that both required a "written warranty" or "implied warranty" to be in effect and relied on the "sale" language in the definition of "written warranty" and "implied warranty" to hold that both prongs "presuppose 'a sale.' " Because "sale" is not defined in the Act, the *DiCintio* court used the Uniform Commercial Code's definition of "sale," which entails the "passing of title." *DiCintio*, 97 N.Y.2d at 470, 768 N.E.2d at 1124, 742 N.Y.S.2d at 185. From that definition of "sale," the court logically determined that a lessee had no "written warranty" or "implied warranty" under 15 U.S.C. § 2601(6), *supra*; under that framework, the lessee could not be a "consumer." *DiCintio*, 97 N.Y.2d at 470, 768 N.E.2d at 1124, 742 N.Y.S.2d at 185.

As noted above, however, the third prong does not exclusively require that the warranty meets the Act's definition if in fact it is enforceable under state law. As previously noted, no one disputes that lessees are entitled to enforce the warranty under state law, and the Act includes as consumers those entitled to enforce a warranty under the Act *"or* under applicable State law." 15 U.S.C. § 2301(3) (2000). This third prong bypasses the need for title to transfer to the consumer because it does not necessarily require a "sale," even as *DiCintio* defines one. Thus, we find flawed the *DiCintio* court's presuppositions concerning the "sale" requirement.

Further, as noted above, although plaintiffs did not argue that long-term lessees do not satisfy the first prong under the definition of consumer, we are unconvinced that Congress did not intend to include long-term lessees even when they used terms such as "purchaser" in the first prong of the definition of "consumer" under section 2301(3), and "sale" in the two definitions of "written warranty" under section 2301(6). We find persuasive the authority noting that long-term lease agreements are akin to an installment contract or a chattel mortgage, in which the seller's restrictions are aimed at protecting its interests until the balance is paid in full. Facing similar facts as ours, the Pennsylvania Supreme Court wrote:

> "This [48-month] lease agreement extends for most of the useful life of the automobile. The payments due under the lease agreement may be almost equal to the full purchase price, with interest, of the automobile under a four year installment sales agreement. Also, unlike typical lease agreements, the responsibility for maintaining the automobile rests with the lessee, taxes are to be

paid by the lessee, the lessee must obtain insurance, and in the event of default, the lessee pays the remaining installments and receives a credit for the proceeds from the sale of the automobile." *Henderson*, 31 Pa. D. & C.3d at 8, 41 U.C.C. Rep. Serv. (CBC) at 783-84.

See also *Freeman*, 253 Ga. at 702, 324 S.E.2d at 467.

In this case, as in the Pennsylvania case, the long-term lessee has substantial obligations that are consistent with ownership, such as paying taxes and obtaining insurance, and here, the lessees had the right to purchase the vehicle after having paid a substantial amount of rent on it. *Henderson*, 31 Pa. D. & C.3d at 8, 41 U.C.C. Rep. Serv. (CBC) at 783-84.

■ While we find dispositive the Act's plain language and do not view a foray into the Act's legislative history as necessary or even prudent, we are cognizant of the *DiCintio* court's examination that found legislative history that Congress did not intend lessees to be included in the Act. However, other legislative history supports the opposite result. A stated purpose behind this bill, not a precursor to it, was making warranties more readily understood and providing the Federal Trade Commission with a means of "better protecting consumers," particularly those with new car warranties. See *DiCintio v. DaimlerChrysler Corp.*, 185 Misc. 2d 667, 671, 713 N.Y.S.2d 808, 811 (2000), quoting H.R. Rep. No. 1107 at ___ (1974), *reprinted in* 1974 U.S.C.C.A.N. 7702, 7708). Having determined that the lessees in this case meet the statutory definition of "consumer," at least under the third prong, and having noted that a "consumer product" is one which the supplier can make "indirectly" available to consumers, we find that the legislative intent is best served by protecting them with a broad reading of the definitions of "written warranty" and "implied warranty."

The *DiCintio* court also concludes that it is questionable whether a written warranty can become "the basis of the bargain between a supplier and a buyer for purposes other than resale of such product" when it is sold to a lessor under 15 U.S.C. § 2301(6), *supra*. The court noted that while the lessor's purpose in buying the car may not be solely for resale, it collects rent and "ultimate resale is presumably an intrinsic part of its plan when it takes title to the vehicle." *DiCintio*, 97 N.Y.2d at 474, 768 N.E.2d at 1127, 742 N.Y.S.2d at 188. As such, the court concluded that the lessor's intent was ultimately to resell the automobile and thus the lease was likely not the basis of the bargain and the lessor was not a buyer "for purposes other than resale." The problem with that reasoning is that most automobile purchasers buy a car with the ultimate goal of resale, although maybe

not until much later. Under the *DiCintio* court's reasoning, few buyers could ever enforce the Act. *Cohen*, 264 F. Supp. 2d at 620.

It would seem that public policy is best served by affording long-term automobile lessees the same rights afforded to buyers. At least in this case, the lessees paid sales taxes, maintained insurance on the vehicle, and had the option to exercise *at any time* an option to purchase the vehicle. Lessees committed more than $17,000 towards the purchase of the vehicle and bound themselves to its care for three years. Where extensive warranties, such as the one defendant issued here, presumably are factored into the value of the automobile, from which the monthly leasing amount is fashioned, it would serve no function to deny lessees the ability to enforce the warranty.

■ Ultimately, in this case whether title passed from the lessor to the lessee is inapposite because we determine that plaintiffs are "consumers" under the Act and because we determine that there was a written warranty issued "in connection with the sale." Plaintiffs stated an action for breach of written warranty under the Act. The trial court thus erred in dismissing their action.

### Privity and Implied Warranties

Although this issue was not raised in the briefs, we acknowledge the plaintiffs' pleading of breach of implied warranty under the Act. "Implied warranty" is defined as "an implied warranty arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7) (2000).

■ Privity typically is required under the Illinois Uniform Commercial Code (810 ILCS 5/1—101 *et seq.* (West 2000)) to establish a claim for breach of implied warranty, but the Illinois Supreme Court determined that this requirement was unnecessary where the claim is brought under the Act. *Szajna v. General Motors Corp.*, 115 Ill. 2d 294, 503 N.E.2d 760 (1986). Specifically, the court determined that where there is a "written warranty" under the Act, the state law privity requirement is overridden by federal law and therefore a consumer with a written warranty under the Act could maintain an action for breach of implied warranty without having contractual privity with the manufacturer. *Szajna*, 115 Ill. 2d at 314-15, 503 N.E.2d at 769. The *Szajna* court reasoned that by extending a written warranty, the manufacturer creates a relationship akin to privity so as to support an implied warranty. 115 Ill. 2d at 315, 503 N.E.2d at 769. See also *Rothe v. Maloney Cadillac, Inc.*, 119 Ill. 2d 288, 518 N.E.2d 1028 (1988) (characterizing *Szajna* as holding that privity is not required to bring an action for breach of implied warranty where there is a written warranty under the Act).

That holding has been criticized and not followed by federal courts sitting in this state. See *Soldinger v. Aston Martin Lagonda of North America, Inc.*, No. 97 C 7792, slip. op. at 7-8 (N.D. Ill. 1999); *Diamond*, slip. op. at 5-6. We make no independent determination on the issue. "We are bound by the principle of *stare decisis* and must adhere to the decisions of our supreme court." *Wreglesworth v. Arctco, Inc.*, 316 Ill. App. 3d 1023, 1030, 738 N.E.2d 964, 970 (2000). Because plaintiffs have established they are "consumers" under the "Act" entitled to enforce a "written warranty," they are also entitled to sue for breach of implied warranty under the Act under the Illinois Supreme Court's interpretation thereof.

## CONCLUSION

In conclusion, we determine that the trial court erred in dismissing plaintiff's suit under the Act because they were lessees rather than purchasers. The cause is reversed and remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

McNULTY and McBRIDE, JJ., concur.