(No. 34065.—

The Peoples Gas Light and Coke Company *et al.*, Appellants, *vs.* The City of Chicago *et al.*, Appellees.

*Opinion filed September 25, 1956.*

Daily, J., took no part.

Ross & O'Keefe, Sidley, Austin, Burgess & Smith, Wilson & McIlvaine, Forest D. Siefkin, and C. Bouton McDougal, all of Chicago, for appellants.

John C. Melaniphy, Corporation Counsel, of Chicago, (Joseph F. Grossman, and Earl E. Meisenbach, of counsel,) for appellees.

Mr. Justice Hershey delivered the opinion of the court:

The Peoples Gas Light and Coke Company sued in the circuit court of Cook County to restrain the enforcement of a Chicago ordinance imposing a tax upon persons engaged in the business of selling gas for use or consumption within the city at the rate of 5 per cent of gross receipts. Upon motion of the city for summary judgment, the court dismissed the complaint. A constitutional question being involved, this court has jurisdiction on direct appeal.

In June of 1955, the General Assembly enacted Senate Bill 750 which amended the Revised Cities and Villages Act and purported to give cities the following additional tax powers:

"To tax any or all of the following occupations or privileges:

"1. Persons engaged in the business of transmitting messages by means of electricity, at a rate not to exceed 5% of the gross receipts from such business originating within the corporate limits of the municipality.

"2. Persons engaged in the business of distributing, supplying, furnishing, or selling gas for use or consumption within the corporate limits of the municipality, and not for resale, at a rate not to exceed 5% of the gross receipts therefrom.

"3. Persons engaged in the business of distributing, supplying, furnishing, or selling electricity for use or consumption within the corporate limits of the municipality, and not for resale, at a rate not to exceed 5% of the gross receipts therefrom.

"4. Persons engaged in the business of distributing, supplying, furnishing or selling water for use or consumption within the corporate limits of the municipality, and not for resale, at a rate not to exceed 5% of the gross receipts therefrom." Ill. Rev. Stat. 1955, chap. 24, par. 23—113, p. 590.

At the same session, the Public Utilities Act was amended to allow these taxes to be passed on to the consumer. Ill. Rev. Stat. 1955, chap. 111⅔, par. 36.

Acting pursuant to this statute, on December 1, 1955, the Chicago city council passed three ordinances. The first, called the "Gas Ordinance," taxed persons engaged in the business of selling and distributing gas in Chicago (including Peoples Gas Light and Coke Company, the only public utility selling gas in Chicago) at the rate of 5 per cent

of gross receipts. The second, called the "Electricity Ordinance," taxed persons engaged in the business of selling and distributing electricity (including Commonwealth Edison Company, the only public utility selling electricity in Chicago) at the rate of 5 per cent of gross receipts. The third, called the "Messages Ordinance," taxed persons engaged in the business of transmitting messages by means of electricity (*i.e.,* Illinois Bell Telephone Company and Western Union Telegraph Company) at the rate of 2 per cent of gross receipts.

However, in the "Electricity Ordinance" a credit, equal to street use payments, is allowed against the tax. Since under its franchise ordinance Commonwealth Edison pays 4 per cent of its gross receipts for use of streets, this taxing ordinance actually exacts only an added 1 per cent—or taken together, the stated 5 per cent. (Commonwealth Edison's franchise ordinance contemplates and provides for a credit of this type.) Likewise, Illinois Bell pays the city 3 per cent of its gross receipts for use of streets under a franchise agreement, so that the additional 2 per cent exacted by the "Messages Ordinance" results in payments equal to 5 per cent. But Peoples Gas, under a perpetual charter granted by the General Assembly in 1855 and consented to by the city of Chicago in 1858, is not required to pay for use of city streets.

Peoples Gas was joined by three of its customers in its attack on the validity of the "Gas Ordinance." The cause was heard on complaint and motion for summary judgment, with affidavits filed by both sides. The court held with the city, granting its motion for summary judgment.

In asking us to reverse the circuit court, Peoples Gas makes three contentions: (1) The tax is not uniform as to class, in violation of section 1 of article IX of the Illinois constitution. (2) The tax results in the unconstitutional impairment of a contract subsisting between it and

the city. (3) The statute upon which the ordinance is based was not passed in accordance with the procedures required by article IV of the Illinois constitution.

The principal issue in the case involves the validity of the tax as against the contention that it is not uniform as to class. (Ill. Const., art. IX, sec. 1.) To determine this question, we must ascertain the following: (1) Did the General Assembly authorize the city of Chicago to impose this particular tax? (2) If so, does the legislation so delegating that authority create an unconstitutional classification?

· As to the existence of the authority, the statute empowers a city to tax *any or all* of the four enumerated occupations or privileges. Moreover, as among these four the rates may vary, so long as none exceeds 5 per cent of gross receipts. Therefore, even if we assume that the actual effect of the "Electricity Ordinance" is to exact a tax of only 1 per cent, as contrasted with the "Gas Ordinance" which imposes a 5 per cent tax, it is clear that the statute contemplates and provides for that possibility. For this reason, any unconstitutional classification must be found, if at all, in the statute.

The pertinent constitutional provisions are as follows:

"§ 1. The general assembly shall provide such revenue as may be needful by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property—such value to be ascertained by some person or persons, to be elected or appointed in such manner as the general assembly shall direct, and not otherwise; but the general assembly shall have power to tax peddlers, auctioneers, brokers, hawkers, merchants, commission merchants, showmen, jugglers, innkeepers, grocery keepers, liquor dealers, toll bridges, ferries, insurance, telegraph and express interests or business, vendors of patents, and persons or corporations owning or using franchises and privileges, in such manner as it shall

from time to time direct by general law, uniform as to the class upon which it operates.

"§ 2. The specification of the objects and subjects of taxation shall not deprive the general assembly of the power to require other subjects or objects to be taxed in such manner as may be consistent with the principles of taxation fixed in this constitution."

Peoples Gas contends that it is in the same "class" as Commonwealth Edison or other sellers of electricity, in that the businesses are competitive and both involve the sale of energy. On the basis of this, it asserts that the tax rates must be equal.

No argument is made, however, that those engaged in transmitting messages by telegraph or telephone, or in selling water, are likewise in the same class with the sellers of electricity and gas. (Cf. *Liberty National Bank* v. *Collins*, 388 Ill. 549, 558.) Accordingly, we must determine whether the legislature may classify separately, for occupation or privilege tax purposes, those engaged in the business of selling gas and those engaged in selling electricity. It is a question of first impression in this State.

It must be recognized at the outset that the two occupations are not identical, and because of their differences the possibility of a separate classification is not necessarily precluded. But there are certain similarities, and it must be judged whether they are sufficient to require that the two be grouped in a single "class," as that word is used in section 1 of article IX of our constitution.

Our general approach must be one of respect for the legislative determination, since a classification of objects for taxation is valid unless shown to be unreasonable or arbitrary. (*Johnson* v. *Halpin*, 413 Ill. 257; *McGrath* v. *City of Chicago*, 309 Ill. 515.) Great latitude is given legislative bodies to classify trades, callings, occupations, or businesses, the only requirement being that the classification rest upon a reasonable basis. *City of Chicago* v.

*The Willett Co.* 1 Ill.2d 311; *Reif* v. *Barrett,* 355 Ill. 104.

The constitutional provision itself makes a number of separate classifications, and these offer some indication as to the broad discretion vested in the General Assembly to classify occupations for revenue purposes. For among those specifically enumerated are some who are in competing businesses or occupations: *e.g.,* peddlers, hawkers, merchants, and commission merchants; showmen and jugglers; toll bridges and ferries.

Similarity here arises mainly from the fact that both electricity and gas are forms of energy which can be used for the same ultimate purpose (though the means of adaptation are different,) and those engaged in selling gas are in certain areas and at certain times in competition with the sellers of electricity. But we do not believe the similarity is so strong as to demand a single classification.

First, as illustrated by the development of Peoples Gas itself, we note significant changes in the characteristics of the product offered for sale and the uses to which it is put. Peoples Gas was incorporated in 1855 by a special act of the legislature, which empowered it to manufacture and sell illuminating gas "for the purpose of lighting the City of Chicago or the streets thereof and any building, manufactories, public places or houses therein contained." Later, in 1897, the legislature provided that companies theretofore authorized to manufacture and distribute illuminating gas could manufacture and distribute gas for fuel purposes and also distribute natural gas. By 1916 approximately 80 per cent of the gas sold by Peoples Gas was used for cooking, heating or other nonlighting uses, and 20 per cent for lighting purposes. This trend continued, it appearing, for example, that at the end of 1953 the city of Chicago had 118,794 lamps served by electricity, but not a single gas lamp in operation. Moreover, during this time, the gas was changed so as to enhance its heating value while at the same time diminishing its illuminating value.

The foregoing, in our opinion, indicates one of the hazards of erecting a constitutional bar to the instant classification and supports that view which leaves it with legislative bodies to keep pace with changes and make needed adjustments through ordinary political processes.

Second, while competition between the two businesses is a factor to be considered, it certainly is not conclusive, especially in view of the constitutional provision itself which enumerates occupations in some ways competitive. Further, this record discloses a vast area where the two businesses are no longer competitive at all. The "gas light era" having passed, lighting is done almost exclusively by electricity.

It appears that at the time the instant ordinance was passed, Peoples Gas was engaged almost entirely in the sale of natural gas for fuel purposes. In this field, it is admitted that gas and electricity may be competing services. But even here, there are basic differences in the means by which the two products are produced, distributed and used; and so many variable factors are involved in determining their respective market positions as to negate the absolute necessity for a single classification.

Third, although there are no Illinois authorities directly in point, there are cases where this court has upheld legislative classifications that differentiated between objects having similar characteristics or attributes. (*Johnson* v. *Halpin,* 413 Ill. 257, cigarettes, as distinguished from other tobacco products; *People* v. *Deep Rock Oil Corp.* 343 Ill. 388, gasoline, as distinguished from other kinds of motor fuel; *Routt* v. *Barrett,* 396 Ill. 322, horse racing, as distinguished from harness racing; *Reif* v. *Barrett,* 355 Ill. 104, sale of tangible personal property generally, as distinguished from sales under conditional sales contracts or sales on time or credit. See also *Heisler* v. *Thomas Colliery Co.* 260 U.S. 245, bituminous coal, as distinguished from anthracite coal, and *Southwestern Oil Co.* v. *Texas,* 217 U.S. 114, wholesale dealers in coal, oil, naphtha, benzine,

or any other mineral oils refined from petroleum, as distinguished from other wholesalers.) Indeed, classifications have been approved where a general occupation has itself been subdivided in some reasonable manner. *McGrath* v. *City of Chicago,* 309 Ill. 515, tax on furniture movers graduated according to size and number of vehicles operated; *Metropolis Theater Co.* v. *City of Chicago,* 246 Ill. 20, graduated license fees for theaters based on price of admission.

Apparently the validity of this type of classification has arisen in only one jurisdiction, Nebraska. In 1916, a Federal district court found a Nebraska 2½ per cent occupation tax on gas companies to be lacking in uniformity. (*Lincoln Gas & Electric Light Co.* v. *City of Lincoln,* 182 Fed. 926.) The court said a page 929: "* * * an electric plant, which furnishes to the public light, heat, and power should be classed the same as a gas plant, which furnishes to the public light, heat, and power. The fact that one furnishes the light, heat and power by means of an electric current—the other by a current of gas—does not * * * justify a difference in classification." This conclusion was approved that same year by the Nebraska Supreme Court in *City of Lincoln* v. *Lincoln Gas & Electric Light Co.* 100 Neb. 182, one justice dissenting. The latter said: "The real question is whether there is any difference in the occupation of manufacturing and selling gas and that of producing and selling electricity as to afford room for classification. It seems to me there is no room for doubt here. An electrician carries on an entirely different occupation from that of a gas maker, and makes a different product, though it may be used for some similar purposes."

We do not find the Nebraska cases persuasive. Even at the time, the differences between the occupations or businesses were probably such as to permit of a separate classification, but since then these differences have increased. An

instance already mentioned is the field of lighting in which competition between the two services is practically nonexistent today.

For the reasons stated, we do not believe it has been demonstrated that the legislative classification is unreasonable or arbitrary; hence, we conclude that the requirements of section 1 of article IX of the Illinois constitution have been met.

Next, Peoples Gas contends that the tax results in the unconstitutional impairment of a contract subsisting between it and the city. The argument runs as follows: Peoples Gas, under its charter, is not obligated to pay the city for use of streets; nor does the city have statutory authority to exact street use payments. (*Village of Lombard* v. *Illinois Bell Telephone Co.* 405 Ill. 209.) Commonwealth Edison, on the other hand, pays the city 4 per cent of gross receipts for use of streets, as required by franchise agreement. So, while both the "Gas Ordinance" and the "Electricity Ordinance" purport to tax at the rate of 5 per cent, in actual effect Commonwealth Edison pays only an additional 1 per cent. Therefore, the purpose of the city council was not to exact an equal tax rate, but under the guise of a taxing ordinance to impose a street use charge of 4 per cent on Peoples Gas. This, it is asserted, is an unconstitutional impairment of contract.

However, even if we accept the contention of Peoples Gas that the city sought to equalize the actual rate of recovery from the two companies and in effect exacted unequal tax rates, still the 5 per cent tax under the "Gas Ordinance" does not cause an unconstitutional impairment of contract. For, as aforesaid, the legislature's grant of authority, containing a valid classification respecting sellers of electricity and sellers of gas, authorized a tax against Peoples Gas up to an amount equal to 5 per cent of gross receipts. Up to this amount the tax is valid regardless of what rate is purportedly imposed or actually exacted under

the "Electricity Ordinance." Even if the actual motive of the city council was as represented, there is no constitutional bar to their so acting. The city had express authority from the legislature to do the very thing it did (*i.e.,* impose a tax against sellers of gas not exceeding 5 per cent and a tax not in excess of 5 per cent against sellers of electricity), and this delegation of power was shown to have been valid.

Finally, it is argued that the statute upon which the ordinance is based was not passed in accordance with that part of section 13 of article IV of the Illinois constitution which declares that every bill "and all amendments thereto shall be printed before the vote is taken on its final passage."

This legislation, Senate Bill No. 750, was introduced on May 26, 1955. After passage in the Senate, the bill was transmitted to the House of Representatives, where it was amended and then passed as so amended. But the Senate refused to concur in the House amendments. On June 30, the last day of the session, a conference committee was appointed, consisting of three members from each body. That committee made a report recommending that the House recede from its amendments and also that a new amendment be adopted. On the same day, each house voted to adopt the committee report.

The journal of the House recites that the conference committee report was printed; but the Senate journal does not state whether the report was ever printed in the Senate, and it is this which Peoples Gas claims vitiates the act.

On this record, we do not believe the objection is well taken. The bill as finally adopted differed in no material respect from the bill as it left the Senate. The only effect of the conference committee amendment was to accomplish the following: restate the exemption of transactions subject to the Municipal Retailers' Occupation Tax Act which was already in the bill; add a provision for uniformity of taxation upon all persons engaged in businesses of the same

class, whether privately or municipally owned, (matters already covered in the definition of "Person,") and make a minor change in the definition of the words "transmitting messages." Such being the case, it cannot be said that the amendment was so connected and dependent upon the remainder of the act that the legislature would not have passed the latter without the former. Hence, even if it be assumed that the constitution requires that the committee report be separately printed by each house, failure to print the conference committee amendment in the Senate would not render the whole act void, but would, at most, invalidate the amendment. (See *People ex rel. Brady* v. *La Salle State Trust and Savings Bank*, 269 Ill. 518, 523.) And since none of the provisions challenged in the instant suit were contained in or materially affected by the amendment, the plaintiffs have not sustained their constitutional attack on the provisions affecting them.

The decree of the circuit court of Cook County is affirmed.

*Decree affirmed.*

Mr. Justice Daily took no part in the consideration or decision of this case.