FIRST DISTRICT
MARCH 24, 2006

1-04-3822

| | | |
|---|---|---|
| LYNNANN WIGGINTON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No.  04 CH 9353 |
| | ) | |
| JESSE WHITE, Illinois Secretary of State, | ) | Honorable |
| | ) | William O. Maki, |
| | ) | Judge Presiding. |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

JUSTICE TULLY delivered the opinion of the court:

Defendant-appellant, Secretary of State Jesse White (Secretary), suspended the school bus driver's permit of plaintiff-appellee, Lynnann Wigginton (Wigginton), for her alleged failure to obtain a negative drug test as required by Illinois Vehicle Code section 6-106.1(g)(5).  625 ILCS 5/6-106.1(g)(5) (West 2002).  Wigginton requested a hearing before the Secretary to contest the suspension of her school bus driver's permit.  Following the hearing, the Secretary upheld the suspension and Wigginton filed a complaint for administrative review of that decision with the circuit court.

The circuit court reversed the Secretary, in essence holding that when Wigginton offered evidence that she did not use marijuana and that the federal regulations governing drug testing procedures were not followed, Wigginton made a prima facie case that the positive drug test was inaccurate and unreliable.  Following Wigginton's prima facie case calling into question the accuracy of the positive drug test, the Secretary failed to offer evidence confirming that the

1-04-3822

positive drug test result was reliable and accurate.

On appeal, the Secretary's arguments can be summarized as follows: (1) during a hearing regarding the Secretary's suspension of a petitioner's school bus driver's permit, the burden of proof should not shift from a petitioner to the Secretary once a petitioner establishes a prima facie case that the positive drug test was unreliable and inaccurate; (2) even if the burden of proof shifts to the Secretary once a petitioner establishes a prima facie case that the positive drug test was unreliable and inaccurate, the burden of proof did not shift to the Secretary in this case because Wigginton's evidence that she did not use any marijuana, that the federal regulations for drug testing were not followed, and that her drug retest was negative for drugs did not establish a prima facie case that the results of the test were unreliable; and (3) the medical review officer's failure to comply with the federal regulation requiring him to advise Wiggington of her right to request a split specimen test did not result in prejudice. For the reasons that follow, we affirm.

FACTS

Wigginton was employed by Round Lake School District (the School District), where she had been a school bus driver for 12 years. Prior to her 12 years as a school bus driver for the School District, Wiggington was employed as a school bus driver by other employers for an additional 12 years. At the time of the incident at issue in this appeal, Wigginton was 48 years of age.

During the 24 years that she was employed as a school bus driver, Wigginton was subjected both to random drug tests and to annual physical examinations, at which additional drug tests were performed. Each of Wigginton's previous drug tests proved negative, except for

2

one drug test taken as part of a yearly exam in 1998 or 1999. That year, Wigginton and three other drivers were notified of a positive result and were instructed to take a retest because of a break in the chain of custody of the samples. Wigginton's retest proved negative and, as a result, she retained her school bus driver's permit and no action was taken against her.

On Friday, February 13, 2004, Wigginton and four other drivers took random drug tests ordered by the School District. On Friday, February 27, 2004, two weeks after the original drug test, Wigginton received a message on her home answering machine from the medical review officer (MRO) at the testing laboratory. The MRO's message informed Wigginton that she had tested positive for marijuana. After receiving the MRO's message, Wigginton immediately telephoned the MRO and advised him that she did not use marijuana and, therefore, she wished to appeal the MRO's findings. During their telephone conversation, the MRO erroneously told Wigginton that the process of appealing a positive drug test was established by each employer. The MRO stated that he did not know the School District's positive drug test appeal policy and instructed Wigginton to speak with the School District within the next 72 hours regarding the School District's process of appealing a positive drug test.

Contrary to the what the MRO told Wigginton, the process of challenging a positive drug test was controlled by federal regulations, which uniformly applied to all employers of school bus drivers. Specifically, the federal regulations, found in the Department of Transportation's regulations **49 C.F.R.** § **40.3 2003**, state that when an employee like Wigginton provided a urine specimen for a drug test, the MRO was required to divide the urine specimen into two containers, one of which was to be the "primary specimen" and the other of which was

to be the "split specimen." 49 C.F.R. § 40.71 (a) (2003). The federal regulations also state that when the MRO informed the employee that he or she had received a positive drug test, the MRO "must notify the employee of his or her right to have the split specimen tested" and the MRO "must inform the employee that he or she has 72 hours from the time [the MRO] provides the notification [of the positive test] to him or her to request a test of the split specimen." 49 C.F.R. §§ 40.153(a), (b) (2003).

In compliance with the MRO's instructions, on Sunday, February 29, 2004, Wigginton informed her supervisor both of the positive result and of the MRO's instruction that she had 72 hours to appeal the MRO's findings pursuant to the appeals process established by the School District. Wigginton's supervisor instructed Wigginton to meet her the next morning for a drug re-test at 9 a.m. at the Lake Forest Medical Center. Wiggington complied with the supervisor's instructions and submitted another urine specimen on Monday, March 1, 2004. Within 24 hours of the retest, the MRO notified Wigginton that the retest results were negative for drugs.

Notwithstanding Wigginton's drug re-test on February 29, 2004, the results of which were negative for any drug use, on March 8, 2004, the Secretary issued an order of suspension of Wigginton's school bus driver's permit. The order of suspension stated that Wigginton's school bus driver's permit was suspended for three years because Wigginton was "no longer in compliance with the provisions of Section 6-106.1(g)(5) of the Illinois Vehicle Code." 625 ILCS 5/6-106.1(g)(5) (West 2002).

Wigginton filed a timely request for an administrative hearing to contest the suspension of her school bus driver's permit. In her request for an administrative hearing, Wigginton stated,

1-04-3822

inter alia, that she did not use marijuana and that the positive drug test was inaccurate.

A hearing was conducted before hearing officer Wayne Gardner on April 28, 2004. At the hearing, Wigginton testified that the positive drug test could not have been accurate because she does not use marijuana. Wigginton also offered evidence regarding her February 27, 2004 conversation with the MRO, during which the MRO informed Wigginton that her drug test was positive and instructed Wigginton to contact the School District to ascertain the School District's policy for appealing a positive drug test. Wigginton confirmed that she had not been notified of her right to request a test of a split specimen. Finally, Wigginton offered evidence regarding both the consistent negative drug test results she had received during the 24 years she had been a school bus driver and the negative drug test result she received following the March 1, 2004 retest that she completed at Lake Forest Medical Center pursuant to her supervisor's instruction.

Following the hearing, hearing officer Gardner issued a four-page findings and recommendations in which he reasoned that Wigginton had the burden of proving, by a preponderance of the evidence, that she was entitled to rescission of the school bus driver's permit suspension. Hearing officer Gardner's findings and recommendations did not question the credibility of Wigginton's testimony that she did not use marijuana and noted that *the federal procedures governing drug testing were likely not followed in that it appeared that the original sample was not a split sample.*

In reaching his conclusion that Wigginton failed to demonstrate a right to rescission of the suspension, hearing officer Gardner noted that, despite the evidence offered by Wigginton suggesting that the federal procedures for split specimen testing were not followed, Wigginton

5

had the burden of also producing a copy of the original test result and proving that the federal split sample procedures were not followed. The Secretary adopted hearing officer Gardner's findings and recommendations when he issued his decision on May 11, 2004, denying Wigginton's petition for rescission of the bus driver's permit suspension. Wigginton then sought administrative review in the circuit court.

On November 19, 2004, after considering the parties' briefs and oral arguments, the circuit court issued its memorandum opinion and order reversing the Secretary's decision. The circuit court concluded that Wigginton satisfied her burden of proving that the positive drug test was unreliable. The circuit court was persuaded by Wigginton's credible and unrebutted testimony that she did not use marijuana. The circuit court noted that Wigginton complied with her supervisor's instructions and submitted to a retest on March 1, 2004, the result of which was negative for drugs. Additionally, the circuit court cited to Wigginton's 24-year career as a school bus driver, during which she underwent numerous drug tests and never had her permit suspended for failing a drug test. The circuit court further reasoned that the evidence regarding the MRO's failure to notify Wigginton of her right to request a test of the split specimen within 72 hours of notification of the positive drug test demonstrated a failure to comply with the federal regulations. Specifically, the circuit court concluded, contrary to the applicable federal regulations governing drug testing, there was no evidence that a split specimen was created when Wigginton provided the urine specimen on February 13, 2004. In light of this evidence, the circuit court rescinded Wigginton's school bus driver's permit suspension, concluding that the positive drug test upon which the suspension was based was unreliable.

1-04-3822

Following the circuit court's reversal, the Secretary filed this timely appeal.

DISCUSSION

As a preliminary matter, we note that this court reviews the administrative agency's decision and not the circuit court's decision. *Lindsey v. Board of Education*, 354 Ill. App. 3d 971, 978 (2004). The standard of review applied to an administrative agency's decision depends upon whether the issue presented is one of fact or one of law. *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 369 (2002). An administrative agency's factual findings are reviewed by applying a manifest weight of the evidence standard. *Lindsey*, 354 Ill. App. 3d at 978. An administrative agency's legal conclusions, on the other hand, are reviewed *de novo*. *Lindsey*, 354 Ill. App. 3d at 979.

Here, the first issue raised by the Secretary is, in the context of an administrative hearing in which a school bus driver challenges the suspension of his or her school bus driver's permit, whether the burden of proof should shift from the petitioning school bus driver to the Secretary following a *prima facie* showing by the school bus driver that the positive drug test results upon which the suspension was based were unreliable. Resolution of this issue requires an analysis of law only and, therefore, we will review this issue *de novo*. See *People v. Orth*, 124 Ill. 2d 326 (1988).

The parties cite to our supreme court's decision in *People v. Orth* in support of their respective positions. *Orth*, 124 Ill. 2d 326. In *People v. Orth*, a motorist filed a request to rescind the State's summary suspension of his driver's license for driving under the influence of alcohol. *Orth*, 124 Ill. 2d at 329. The statute at issue in that case did not specify whether the initial burden of proof rested with the State or with the petitioning motorist. Therefore, in the words of our supreme court, the "principal question" posed in the motorist's appeal was "whether a driver who suffers the summary suspension of his  or

7

her license has the burden of proving that the suspension should be rescinded. *Orth*, 124 Ill. 2d at 328-29. After examining the interests of the parties, the court held that the due process clauses of the Illinois and United States Constitutions U.S. Const., amend. XIV Ill. Const. 1970, art. I, § 2 permitted placing the initial burden of proof on the motorist to prove that summary suspension of his or her driver s license should be rescinded. *Orth*, 124 Ill. 2d at 337-38.

After holding that due process permitted placing the initial burden of proof on the motorist, the court concluded that once the petitioning motorist made a *prima facie* showing that the breathalyzer test results upon which the suspension was based were unreliable, the burden of proof shifted to the State to prove that the Breathalyzer results were, in fact, reliable and accurate. *Orth*, 124 Ill. 2d at 340-41.

In this case, the parties agree that section 1001.100 s of the Secretary of State s regulations, which states that t he burden of proof is upon the petitioner for any relief in a hearing, applies to petitions for rescission of a suspended bus driver s permit, such as the one brought by Wigginton. 92 Ill. Adm. Code § 1001.100 s 2002 . Therefore, contrary to the situation faced by our supreme court in *People v. Orth*, where the relevant statute did not specify on which party the initial burden of proof was placed, the parties in this case stipulate that section 1001.100 s places the burden of proof, at least initially, with a petitioner seeking relief in any hearing before the Secretary. 92 Ill. Adm. Code § 1001.100 s 2002 .

Because the parties agree that the initial burden of proving a right to rescission of a suspension lies with a petitioner, the primary issue in this case is, in the context of an administrative hearing in which a school bus driver challenges the suspension of his or her school bus driver s permit following a positive drug test result, whether a *prima facie* showing by the petitioning school bus driver that the positive drug test result was unreliable shifts the burden of proof to the Secretary. The Secretary contends that the burden of proof

should never shift from the petitioner to the Secretary. Wigginton, on the other hand, asserts that our supreme court's decision in *People v. Orth* applies to this case such that once a petitioner makes a *prima facie* case showing that the positive drug test results were unreliable, the burden of proof shifts to the Secretary to prove the reliability of the positive drug test. We agree with Wigginton.

The Department of Transportation Regulations (DOT Regulations) govern the procedures for drug testing Illinois school bus drivers and other commercial drivers. 49 C.F.R. § 40.3 (2003); 49 U.S.C. § 31306 (2000); 625 ILCS 5/6-106.1 (West 2002). Section 40.329 of the DOT Regulations states that a school bus driver who has received a positive drug test may make a written request to the MRO for copies of any records pertaining to the school bus driver's use of alcohol and/or drugs, including records of the school bus driver's DOT-mandated drug and/or alcohol tests. 49 C.F.R. § 40.329 (2003). Section 40.323 of the DOT Regulations requires that, once a school bus driver has initiated a legal proceeding challenging the positive drug test results, the MRO must provide the school bus driver's employer with all information relating to the school bus driver's positive drug test. 49 C.F.R. § 40.323 (2003). In addition, section 40.323 of the DOT Regulations specifically provides that, in the event of an "arbitration concerning disciplinary action taken by the employer" or other "administrative proceeding" brought by, or on behalf of, an employee and resulting from a positive DOT drug or alcohol test, "the decision maker" in those proceedings shall receive, upon written request, all information related to a school bus driver's positive drug test. 49 C.F.R. § 40.323 (2003). Finally, section 40.323 of the DOT Regulations permits the "decision maker" to provide the parties involved in the positive-drug-test-related proceedings with all of the information related to the school bus driver's positive drug test. 49 C.F.R. § 40.323 (2003).

1-04-3822

In support of his argument that our supreme court's decision in *People v. Orth* should not apply to petitions for rescission of a school bus driver's permit suspension, the Secretary asserts that because section 40.329 of the DOT Regulations permits a school bus driver to make a written request for the laboratory information related to his or her positive drug test, the school bus driver has "easier access to the evidence." The Secretary also asserts that a petitioner's *prima facie* showing should not shift the burden of proof because forcing the Secretary to request the laboratory information and establish that a positive test was reliable "would increase the Secretary's burden unnecessarily." In light of our supreme court's decision in *People v. Orth* and the relevant DOT Regulations, we cannot agree with the Secretary.

First, it is clear that the Secretary is correct when he asserts that section 40.329 of the DOT Regulations permits a school bus driver who has received a positive drug test to make a written request for the laboratory results and other information regarding the school bus driver's positive drug test. 49 C.F.R. § 40.329 (2003). It is equally clear, however, that section 40.323 of the DOT Regulations permits a hearing officer, or other "decision maker" in any proceeding concerning disciplinary action that resulted from a positive drug test, the opportunity to request and receive all laboratory results and other information regarding the positive drug test. 49 C.F.R. § 40.323 (2003). Further, section 40.323 of the DOT Regulations states that, once the "decision maker" receives the information, all of the parties in the proceedings initiated by the employee will also have access to all of the laboratory results and other positive-drug-test-related information. 49 C.F.R. § 40.323 (2003). Therefore, since the DOT Regulations provide the school bus driver, the school bus driver's employer, the hearing officer, and the Secretary with procedures for obtaining all information regarding a school bus driver's positive drug test, we agree with Wigginton that it is irrelevant whether the school bus driver has "easier" access to the laboratory results and other information.

10

Second, we recognize that, following a school bus driver's prima facie case that the positive drug test was unreliable, forcing the Secretary to lay a foundation for the positive drug test results and demonstrate that the positive drug test results were reliable exacts a modest administrative burden on the Secretary. However, we must also consider the severity of the automatic punishment for a positive drug test result, which in Wigginton's case was an automatic three year suspension of her school bus driver's permit. See Bell v. Burson, 402 U.S. 535, 539, 29 L. Ed. 2d 90, 94, 91 S. Ct. 1586, 1589 1971 the interest a person has in a driver's license is significant, particularly in cases where driving is essential to the person's livelihood. Therefore, we cannot agree with the Secretary's argument that this modestly inconvenient administrative burden is unnecessary.

In sum, after reviewing the various interests of the parties and the relevant DOT Regulations, we are unpersuaded by the Secretary's efforts to distinguish People v. Orth from the present case. We can not agree with the Secretary's assertion that our supreme court's holding in People v. Orth should not apply to a school bus driver who wishes to challenge the reliability of the drug test upon which his or her school bus driver's permit suspension was based. See Orth, 124 Ill. 2d at 340-41. Specifically, as is required when a motorist petitions for rescission of the state's summary suspension of his or her driver's license on the basis of a failed Breathalyzer test Orth, 124 Ill. 2d at 329 , we hold that when a school bus driver has had his or her driving permit suspended based on a positive drug test result, the burden is on the school bus driver to present prima facie evidence that the positive drug test result was unreliable. However, once a school bus driver has presented prima facie evidence regarding the unreliability of the positive drug test result, the burden of proof shifts to the Secretary to lay a foundation for the admission of the test results and to prove the reliability and accuracy of those results.

Next, we turn to whether, in this case, Wigginton satisfied her burden of establishing a prima facie

11

case that the positive drug test from February 13, 2004, was unreliable and, if so, whether the Secretary established a foundation for the admission of the test results and proved the reliability of the test results.

In *People v. Orth*, our supreme court addressed what evidence a motorist must present in order to establish a *prima facie* case for rescission of a suspended driver's license based on a failed Breathalyzer test and explained

Where the motorist argues for rescission of his or her driver's license suspension on the basis that the test results were unreliable, such evidence may consist of any circumstance which tends to cast doubt on the test's accuracy, including, but not limited to, credible testimony by the motorist that he or she was not in fact under the influence of alcohol. We emphasize that this is not an invitation to commit perjury. Only if the trial judge finds such testimony credible will the burden shift to the State to lay a proper foundation for the admission of the test results. The trial judge's finding as to the *prima facie* case will not be overturned upon appeal unless against the manifest weight of the evidence. *Emphasis added*. *Orth*, 124 Ill. 2d at 341.

Our supreme court also clarified that, in the context of a summary suspension of a driver's license based on a driver's failed Breathalyzer test, once the driver makes a *prima facie* case that the Breathalyzer test was unreliable, the state can only avoid rescission by laying the proper foundation and moving for admission of the Breathalyzer test into evidence. *Orth*, 124 Ill. 2d at 340. Our supreme clarified that the process by which the state must establish a foundation for admission of the Breathalyzer test will include

1 evidence that the tests were performed according to the uniform standard adopted by the Illinois Department of Public Health, 2 evidence that the operator administering the tests was certified

by the Department of Public Health, (3) evidence that the machine used was a model approved by the Department of Public Health, was tested regularly for accuracy, and was working properly, (4) evidence that the motorist was observed for the requisite 20 minutes prior to the test and, during this period, the motorist did not smoke, regurgitate, or drink, and (5) evidence that the results appearing on the printout sheet can be identified as the tests given to the motorist. *Orth*, 124 Ill. 2d at 340, citing *People v. Winfield*, 30 Ill. App. 3d 668, 672 (1975); *People v. Crawford*, 23 Ill. App. 3d 398, 402-03 (1974). See also *People v. Black*, 84 Ill. App. 3d 1050 (1980).

In this case, Wigginton testified at the administrative hearing that she did not use marijuana and, therefore, she questioned the reliability and accuracy of the positive drug test. Hearing officer Gardner's findings and recommendations did not question the credibility of Wigginton's testimony, and Wigginton's testimony was not contradicted by the Secretary at the hearing. We see no appreciable difference between a motorist's credible testimony that he was not under the influence of alcohol, which challenged the reliability of the positive Breathalyzer test upon which his driver's license suspension was based (see *Orth*, 124 Ill. 2d at 341), and Wigginton's credible testimony that she did not use marijuana, which challenged the reliability of the positive drug test result upon which her school bus driver's permit suspension was based. In light of this record, therefore, we agree that Wigginton satisfied her burden of proving a *prima facie* case that the positive drug test result was unreliable, at which point the burden of proof was shifted to the Secretary to establish that the drug test was, in fact, reliable.

Before addressing whether the Secretary offered evidence rebutting Wigginton's *prima facie* case, we note that this record confirms that Wigginton offered additional evidence that undermined the reliability of her positive drug test. First, Wigginton offered evidence that, during the 24 years she had been employed

as a school bus driver, she had taken numerous drug tests, all of which confirmed that Wigginton did not use marijuana. Second, Wigginton offered evidence that, contrary to section 40.153 of the DOT Regulations, which states that an MRO must inform a school bus driver who has received a positive drug test result of his or her right to request a split specimen test within 72 hours 49 C.F.R. § 40.153 2003 , the MRO in this case erroneously advised Wigginton that the process of appealing the positive drug test result was at the School District s discretion. This led hearing officer Gardner to conclude that is was likely that the original sample was not a split sample. Third, in compliance with the MRO s directions, Wigginton contacted the School District and requested instructions regarding appealing the positive test. Wigginton s supervisor instructed Wigginton to meet her at Lake Forest Medical Center for a retest. Wigginton followed her supervisor s instructions and the results of this retest, like the drug tests she had taken over the past 24 years, was negative for drugs. This evidence casts serious doubt on the reliability of the positive drug test upon which Wigginton s three-year suspension was based and, faced with this record, we must conclude that the burden was shifted to the Secretary to demonstrate that the reliability of the positive drug test.

Once the burden of proof was shifted to the Secretary, the Secretary could only avoid rescission of the permit suspension by laying the required foundation and admitting into evidence the positive drug test to confirm that the results were reliable. See Orth, 124 Ill. 2d at 340. Here, following Wigginton s prima facie evidence that the positive drug test was unreliable, the Secretary failed to offer any evidence suggesting that the positive drug test was, in fact, reliable. When assessing the hearing officer s determinations on issues of fact, we apply a manifest weight of the evidence standard of review. Lindsey, 354 Ill. App. 3d at 978. In the absence of any evidence contradicting Wigginton s prima facie showing of unreliability, however, the Secretary cannot avoid rescission of Wigginton s suspension under any

standard of review. In light of this record, therefore, we are left with the conviction that Wigginton s suspension must be rescinded.

Finally, the Secretary argues that, even if the MRO failed to comply with section 40.153 of the DOT Regulations in that the MRO failed to provide Wigginton with notice of her right to request a split sample test within 72 hours, the MRO s failure to provide notice of this right was not prejudicial. We disagree.

Section 40.153 of the DOT Regulations provides that when a school bus driver receives a positive drug test result, the MRO must immediately contact the school bus driver who received the positive drug test result and must notify the school bus driver of his or her right to have the split specimen tested and that the request must be made to the MRO within 72 hours. 49 C.F.R. § 40.153 2003 . In addition, section 40.171 b 1 of the DOT Regulations states that if a school bus driver fails to request a test of the split specimen within 72 hours, the school bus driver may present to the MRO information documenting circumstances that unavoidably prevented the school bus driver from making a timely request. 49 C.F.R. § 40.171 b 1 2005 . If the MRO concludes that their was a legitimate reason for the school bus driver s failure to contact the MRO within 72 hours, the MRO is to direct the testing of the split specimen as if the school bus driver s request was timely. 49 C.F.R. § 40.171 b 2 2005 .

In this case, the Secretary asserts that the erroneous instructions to undergo a new drug test, which Wigginton received both from the MRO and from her supervisor, did not prejudice Wigginton. The Secretary contends that since a school bus driver who can demonstrate to the MRO that circumstances unavoidably prevented the school bus driver from making a timely request for a split specimen test can have the test completed as if the split specimen test was requested within 72 hours, Wigginton could have

1-04-3822

requested the split specimen test as late as the date of the March 25, 2004, hearing. We cannot agree with the Secretary's argument.

First, this record strongly supports hearing officer Gardner's conclusion that "the original sample was not a split sample." Therefore, it would have been useless for Wigginton to request a split sample test when the split sample had not been created. Second, even if a split specimen existed, Wigginton proved a prima facie case and shifted the burden of proof to the Secretary to confirm the reliability of the positive drug test results upon which Wigginton's school bus driver's permit suspension was based. Part of the Secretary's efforts to confirm the reliability of the positive drug test would have involved proving that the MRO complied with section 40.71 the DOT Regulations, which requires the MRO to separate the urine specimen into a "primary specimen" and a "split specimen" 49 C.F.R. § 40.71 (2003), and proving that the MRO complied with Section 40.153 of the DOT Regulations, which requires the MRO to provide school bus drivers who receive a positive drug test result with notice of their right to request a test of the split specimen. 49 C.F.R. § 40.153 (2003). Faced with this record, we must conclude that the MRO's failure to comply with the DOT Regulations prejudiced Wigginton and raised serious doubts as to the positive drug test's reliability. The Secretary failed to confirm the reliability of the positive drug test upon which Wigginton's suspension was based and, therefore, Wigginton's school bus driver's permit suspension must be rescinded.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

16