FIRST DIVISION
September 24, 2007

No. 1-06-3388

EXELON CORPORATION,               )    Appeal from the
                                  )    Circuit Court of
    Plaintiff-Appellant,          )    Cook County.
                                  )
       v.                      )
                                  )
ILLINOIS DEPARTMENT OF REVENUE, and   )
BRIAN A. HAMER, as Director of        )
Revenue,                          )    Honorable
                                  )    Sheldon Gardner,
    Defendants-Appellees.         )    Judge Presiding.


JUSTICE WOLFSON delivered the opinion of the court:

At issue in this case is whether Commonwealth Edison (ComEd), a wholly-owned subsidiary of Exelon Corporation, as successor to Unicom Corporation, is entitled to a tax credit for investments in "qualified property" on its 1995 and 1996 tax returns pursuant to section 201(e) of the Illinois Income Tax Act (Act) (35 ILCS 5/201(e) (West 1994)). We also are asked to consider whether section 201(e), as applied to gas and electric utility providers, violates the uniformity clause of the Illinois Constitution. The Department of Revenue rejected Exelon's claims and we agree.

FACTS

In 1995 and 1996, ComEd invested nearly $3 billion in

property used for generating, transmitting, and distributing electricity to customers in Illinois. The property was depreciable under section 167 of the Internal Revenue Code, and had not been previously used in Illinois. Neither ComEd nor its parent company claimed a section 201(e) credit on its original combined 1995 or 1996 Illinois tax return. On May 28, 1998, ComEd's parent company, Unicom Corporation, filed amended Illinois combined income tax returns, seeking a $10,419,507 section 201(e) credit for 1995 and a $4,398,115 credit for 1996. Section 201(e) provides a tax credit against the Personal Property Tax Replacement Income Tax for investments in "qualified property."

The Department of Revenue (Department) denied the requests. Unicom submitted an administrative protest and requested a hearing. The parties filed cross-motions for summary judgment.

In support of its motion for summary judgment, Unicom attached an affidavit and report from its expert witness, Dr. Joel Fajans, a professor of physics at University of California, Berkeley. Dr. Fajans opined that, as a matter of irrefutable scientific fact, electricity itself is both a physical and material commodity. Dr. Fajans noted that electricity can be sensed, measured, stored, and weighed.

Unicom also asked the Department to admit whether it had

ever approved an investment credit for either a natural gas utility or another regulated electric utility. After raising a relevancy objection, the Department admitted it allowed investment credits to natural gas utilities generally. The Department denied granting the credit to a regulated electric utility. The Department admitted, however, that between the tax years 1992 and 1998, a combined gas and electric utility filed an amended return claiming the section 201(e) credit for property used in its electricity business. The Department did not audit the amended return and the taxpayer received the credit.

The Administrative Law Judge (ALJ) recommended granting the Department's summary judgment motion. The ALJ found the Illinois General Assembly did not intend to include electricity within the meaning of "tangible" when enacting section 201(e), relying in large part on our supreme court's decision in <u>Farrand Coal Co. v. Halpin</u>, 10 Ill. 2d 507, 140 N.E.2d 698 (1957). The ALJ also found that "[t]reating electric utilities differently than natural gas utilities *** does not violate the uniformity clause of the Illinois Constitution." The Director of the Department accepted the ALJ's recommendation. Unicom petitioned for circuit court review of the administrative decision. After Unicom was purchased by Exelon Corporation, the circuit court ordered the case caption changed to "Exelon Corporation, as successor to

1-06-3388

Unicom Corporation."  The court affirmed the Director's decision. Exelon appeals.

DECISION

We review the administrative agency's decision, not the circuit court's decision.  Wigginton v. White, 364 Ill. App. 3d 900, 905, 847 N.E.2d 646 (2006).  An administrative agency's factual determinations are reviewed under a manifest weight of the evidence standard.  Lindsey v. Board of Education of the City of Chicago, 354 Ill. App. 3d 971, 978, 847 N.E.2d 1161 (2004). An administrative agency's legal conclusions, however, are reviewed de novo.  Wigginton, 364 Ill. App. 3d at 905; Lindsey, 354 Ill. App. 3d at 979.  We review the issues here de novo.

I. Classification of Electricity as Intangible

Section 201(e) of the Act provides a tax credit for investments in "qualified property."  35 ILCS 5/201(e) (West 1994).  The statute defines "qualified property" as property "used in Illinois by a taxpayer who is primarily engaged in manufacturing, or in mining coal or fluorite, or in retailing." 35 ILCS 5/201(e)(2)(D) (West 1994).  "Retailing" is defined as "the sale of tangible personal property or the sale of services rendered in conjunction with the sale of tangible consumer goods or commodities."  35 ILCS 5/201(e)(3) (West 1994).  At issue in this case is whether electricity is "tangible personal property."

-4-

1-06-3388

The legislature did not define "tangible personal property" within the Act.

Exelon contends the Department erred in determining ComEd does not, as a matter of law, engage in "retailing" as defined by section 201(e). Specifically, Exelon contends the Department erred in determining the Illinois legislature did not intend for electricity to be considered "tangible" when enacting the section 201(e) tax credit.

When the facts are undisputed, the determination of whether property is exempt from taxation is a question of law. Chicago Patrolmen's Association v. Department of Revenue, 171 Ill. 2d 263, 271, 664 N.E.2d 52 (1996); Schwak, Inc. v. Zehnder, 326 Ill. App. 3d 752, 755, 761 N.E.2d 192 (2001). "Statutes exempting property from taxation are to be strictly construed in favor of taxation." Chicago Patrolmen's Association, 171 Ill. 2d at 271.

The primary goal of statutory interpretation is to ascertain and give effect to the legislature's intent. Andrews v. Kowa Printing Corp., 217 Ill. 2d 101, 105-06, 838 N.E.2d 894 (2005). "The best indication of legislative intent is the statutory language, given its plain and ordinary meaning." Andrews, 217 Ill. 2d at 106. "Where the language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction." Andrews, 217 Ill. 2d at 106.

1-06-3388

In <u>Farrand Coal Co. v. Halpin</u>, 10 Ill. 2d 5077, 140 N.E.2d 698 (1957), our supreme court considered whether electricity was tangible personal property under the Retailers' Occupation Tax Act. The court noted the ordinary and popularly understood meaning of "tangible" is " 'Capable of being touched; also, perceptible to the touch; tactile; palpable.' " <u>Farrand Coal</u>, 10 Ill. 2d at 511, quoting Webster's New International Dictionary, Second Edition, Unabridged, 1946. The same dictionary defined " 'tangible property' as 'Corporeal property either real or personal' and defines 'corporeal' as meaning 'Of the nature of, consisting of, or pertaining to, matter or a material body; physical; bodily; material;-opposed to spiritual or immaterial.' " <u>Farrand Coal</u>, 10 Ill. 2d at 511.

In light of the ordinary and popularly understood meaning of "tangible", the court held:

> "All witnesses who testified on the subject *** agreed that energy cannot be separated from matter and tagged or otherwise physically identified in any way, cannot be located spacially, and does not have dimensions. In all these respects energy falls short of fitting into the ordinary and popularly understood meaning of the word

1-06-3388

> 'tangible' as used by the General Assembly in
> this act in question." <u>Farrand Coal</u>, 10 Ill.
> 2d at 511.

The court noted that although it had previously recognized electricity as personal property, it had at no time held electricity to be "tangible" personal property. <u>Farrand Coal</u>, 10 Ill. 2d at 512.

In light of our supreme court's decision in <u>Farrand Coal</u>, we find including electricity within the classification of "tangible personal property" for the purposes of section 201(e) would be inconsistent with Illinois precedent classifying property as intangible in the context of other tax statutes. See <u>Schwak, Inc.</u>, 326 Ill. App. 3d at 755 ("Moreover, as we look beyond the dictionary definitions of manufacturing, the inclusion of Schwak's business in the classification "manufacturing" [for the purposes of section 201(e)] is inconsistent with Illinois precedent classifying the graphic arts as a service occupation in the context of other statutes.") Contrary to Exelon's contentions, we are bound by the principle of <u>stare</u> <u>decisis</u> and must adhere to the decisions of our supreme court. See <u>Wreglesworth ex rel. Wreglesworth v. Arctco, Inc.</u>, 316 Ill. App. 3d 1023, 1030, 738 N.E.2d 964 (2000).

Moreover, we recognize that "[w]here statutes are enacted

-7-

1-06-3388

after judicial opinions are published, it must be presumed that the legislature acted with knowledge of the prevailing case law." Burrell v. Southern Truss (Wood River Tp. Hospital), 176 Ill. 28 171, 176, 679 N.E.2d 1230 (1997). The section 201(e) tax credit was enacted in 1982, nearly 25 years after Farrand Coal was decided. See Pub. Act 82-315, eff. Jan. 1, 1982. Therefore, we must presume the legislature was aware of, and approved, the Farrand Coal court's classification of electricity as intangible property when it enacted the tax credit and continued to use the phrase "tangible personal property" to refer to those who may receive the credit. See Burrell, 176 Ill. 2d at 176. If the legislature intended to re-classify electricity as "tangible personal property" under section 201(e), it could have specifically modified the classification in the statutory language. See Modern Dairy Co. v. Department of Revenue, 413 Ill. 55, 66, 108 N.E.2d 8 (1952) ("When this court construes a statute and that construction is not interfered with by the legislature, it is presumed that such construction is in harmony with the legislative intent.") The legislature chose not to do so.

We find the Department did not err in determining Exelon does not, as a matter of law, engage in "retailing" as defined by section 201(e).

-8-

1-06-3388

II. Uniformity Clause

Exelon contends section 201(e) violates the uniformity clause of the Illinois Constitution because the statute unlawfully differentiates between suppliers of energy commodities.

The uniformity clause provides:

"In any law classifying the subjects or objects of non-property taxes or fees, the classes shall be reasonable and the subjects or objects within each class shall be taxed uniformly. Exemptions, deductions, credits, refunds and other allowances shall be reasonable." Ill. Const. 1970, art. IX, § 2.

When a statute is challenged on uniformity grounds, the scope of a court's inquiry is relatively narrow. Geja's Café v. Metropolitan Pier & Exposition Authority, 153 Ill. 2d 239, 248, 606 N.E.2d 1212 (1992). "To survive scrutiny under the uniformity clause, a nonproperty tax classification must be based on a real and substantial difference between the people taxed and those not taxed, and the classification must bear some reasonable relationship to the object of the legislation or to public policy." Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority, 172 Ill. 2d 243, 250, 665 N.E.2d 1246

1-06-3388

(1996).  Statutes are presumed constitutional.  Broad latitude is afforded to legislative classifications for taxing purposes. Geja's Café, 153 Ill. 2d at 248.

In this case, Exelon is not challenging a tax or fee; it claims it is entitled to a credit.  Our reading of the plain language of the uniformity clause leads us to conclude the first sentence of the clause does not apply to a credit.  It applies only to taxes or fees.  The second sentence applies to "exemptions, deductions, credits, refunds and other allowances." Ill. Const. 1970, art. IX, § 2.  That sentence merely requires that a credit be "reasonable."  Thus, under our interpretation of the uniformity clause, Exelon may challenge the credit only for reasonableness, not for uniformity.  In other words, Exelon cannot contend under the uniformity clause that there is no real and substantial difference between those receiving the credit (the gas company), and those not receiving the credit (the electric company).  Its argument must be limited to whether the credit itself is reasonable.  Exelon has not challenged the reasonableness of the credit.  It simply wants to receive it.

Our reading of the uniformity clause finds support in a line of cases beginning with the Illinois Supreme Court's decision in Head v. Korshak, 62 Ill. 2d 226, 227, 341 N.E.2d 706 (1976), where the court construed a city of Chicago wheel tax ordinance.

-10-

1-06-3388

A 1974 amendment to the ordinance gave reduced rates to people over 65 years of age who owned automobiles in two classes of smaller automobiles but did not grant the reduction to those over 65 years of age who owned automobiles in the largest class.

The court held the amended ordinance did not add another classification; rather, it established an exemption, or a right to a deduction or credit within the meaning of the second sentence of the uniformity clause. Head, 62 Ill. 2d at 229. The court said:

> "The constitutional determination to require
> that 'exemptions, deductions, credits,
> refunds and other allowances' meet only a
> standard of reasonableness, and not a
> standard of uniformity and reasonableness
> seems clear." Head, 62 Ill. 2d at 229.

The court accepted the reasons advanced by the city to support the reasonableness of the exemption. First, persons aged 65 years and older who were able to afford vehicles with large horsepower engines were less in need of tax relief than others. Second, motor vehicles with higher horsepower created greater environmental problems than lower horsepower vehicles. These reasons were sufficient to justify the exemption granted by the ordinance. Head, 62 Ill. 2d at 230.

In <u>Toney v. Bower</u>, 318 Ill. App. 3d 1194, 1208, 744 N.E.2d 351 (2001), the court upheld the validity of a statutory income tax credit for school expenses. <u>Toney</u>, 318 Ill. App. 3d at 1196; 35 ILCS 5/201(m) (West Supp. 1999). Qualified parents were eligible for a credit of up to $500 against their income tax liability equal to 25% of qualified education expenses. Qualified expenses were defined as amounts incurred on behalf of a qualifying pupil in excess of $250 for tuition, books, and lab fees. The plaintiffs contended the credit violated the uniformity clause because it disqualified nearly all parents of public school students. <u>Toney</u>, 318 Ill. App. 3d at 1207. They argued the $250 per child threshold was unreasonable because it was unrelated to the taxpayers' total financial burden of educating their children.

The court held:

"The sole requirement placed on tax credits by section 2 of article IX is that the '[e]xemptions, deductions, credits, refunds[,] and other allowances shall be reasonable.' [Citation.] Thus, our constitution recognizes that differences will exist in the deductions granted to various classes of taxpayers and merely imposes a

requirement of reasonableness."  <u>Toney</u>, 318

Ill. App. 3d at 1208.

The court found the education credit was reasonable because certain parents who did not benefit from the tax credit had incurred lower costs in educating their children.  <u>Toney</u>, 318 Ill. App. 3d at 1208.  Parents who sent their children to private schools relieved the State and other taxpayers of the expense of educating their children.  The credit was related to the "appropriate legislative goal" of assisting private schools in remaining financially viable.  <u>Toney</u>, 318 Ill. App. 3d at 1208.

In <u>Brown v. Illinois Department of Revenue</u>, 89 Ill. App. 3d 238, 243, 411 N.E.2d 882 (1980), the plaintiffs challenged sections of the Illinois Income Tax Act that allowed noncorporate taxpayers who had sold property during the year to deduct the amount of appreciation that had accrued before the effective date of the Act.  Ill. Rev. Stat. 1975, ch. 120, pars. 2-203(a)(2)(F), 2-203(c)(2)(F).  The plaintiffs, shareholders of a small business corporation, were not allowed to deduct the gain realized from the sale of the corporation's equipment and goodwill.  <u>Brown</u>, 89 Ill. App. 3d at 239.

Citing the language in the second sentence of the uniformity clause, the court said, "The constitution recognizes that there will be differences in the deductions granted to various classes

of taxpayers and merely imposes a requirement of reasonableness on these deductions." Brown, 89 Ill. App. 3d at 243. The court held the sections of the Act granting the deduction only to noncorporate taxpayers were reasonable.

We acknowledge that despite clear language in the uniformity clause separating nonproperty taxes and fees from credits, exemptions, and other allowances, several courts have analyzed exemptions and credits under the uniformity analysis used for taxes and fees--although none of those cases pitted gas companies against electricity providers. None reflected the distinctions between gas and electricity drawn in Farrand and Peoples Gas Light & Coke Co. v. City of Chicago, 9 Ill. 2d 348, 137 N.E.2d 330 (1956) (despite similarities in the energy products sold by gas and electric companies, the court held the legislature may classify the two providers separately).

In Milwaukee Safeguard Insurance Co. v. Selcke, 179 Ill. 2d 94, 688 N.E.2d 68 (1997), the court examined a privilege tax imposed on foreign companies by section 409 of the Illinois Insurance Code. 215 ILCS 5/409(1) (West 1992). The section contained an exemption for domestic companies. The court first found a real and substantial difference between those who pay the privilege tax and those who do not--the disparity in power the Illinois Department of Insurance has over foreign versus domestic

1-06-3388

insurance companies. Milwaukee Safeguard, 179 Ill. 2d at 101.
The court next found the classification did not bear a reasonable
relationship to the object of the legislation or to public
policy. The court held the section imposed an unreasonable
burden on foreign insurance companies because the tax was imposed
on all foreign companies regardless of their financial strength
or their compliance with recordkeeping requirements. Milwaukee
Safeguard, 179 Ill. 2d at 103.

The supreme court analyzed another set of exemptions using
the two-part test for uniformity challenges in Commercial
National Bank of Chicago v. City of Chicago, 89 Ill. 2d 45, 432
N.E.2d 227 (1982). The Chicago service tax statute exempted from
the tax all commodities and securities businesses and all
transactions on a futures or securities exchange for a period of
10 years. Commercial National Bank, 89 Ill. 2d at 70. The
plaintiffs contended they provided services to their clients that
were substantially similar to those provided to clients of
commodities and securities businesses that were not subject to
the tax. The court held:

> "[t]here does not appear to be any real or
> substantial difference between those taxed
> and those not taxed which bears a reasonable
> relationship to the revenue-gathering purpose

1-06-3388

> of the tax\*\*\* The distinction is wholly
> arbitrary and cannot be upheld." <u>Commercial</u>
> <u>National Bank</u>, 89 Ill. 2d at 73.

See also <u>Zunamon v. Zehnder</u>, 308 Ill. App. 3d 69, 77-78, 719 N.E.2d 130 (1999) (applying uniformity analysis to foreign tax credit); <u>Moran Transportation Corp. v. Stroger</u>, 303 Ill. App. 3d 459, 473-75, 708 N.E.2d 508 (1999) (exemption of railroads from diesel fuel tax survived uniformity challenge because there was a real and substantial difference between those taxed and those not taxed, and a reasonable relationship existed between the exemption and the object of the legislation).

We believe the more appropriate approach to the claim for a credit in this case is to follow the plain language of the uniformity clause and require only that the credit be reasonable. Exelon does not specifically challenge the reasonableness of the credit itself. We find the legislature's decision to limit the section 201(e) tax credit to "mining," "manufacturing," and "retailing," is reasonably related to the goal of the legislature in enacting the credit. Because Exelon does not claim the credit is unreasonable, we find its' uniformity argument must be rejected.

CONCLUSION

For the reasons we have stated, we affirm the Department's

-16-

1-06-3388

order.

Affirmed.

CAHILL, P.J., and GARCIA, J., concur.